Gerald J. STEPHENS, D.C., et al., Plaintiffs,

v.

Wendy E. COOPER, Acting Superintendent of Insurance of the State of New York, Defendant.

No. CV 89–4224.

United States District Court, E.D. New York.

Sept. 27, 1990.

---

Brody, Wolkofsky & Brody by Scott A. Brody, Plainview, N.Y., for plaintiffs.

Robert Abrams, New York State Atty. Gen. by Ralph J. Bavaro, Hauppauge, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs, a group of chiropractors and medical doctors, including neurologists, licensed to practice in the State of New York, and PTS Thermal Imaging, a center which performs thermographic examinations,[1] bring this action for declaratory and injunctive relief against the Superintendent of the New York State Department of Insurance ("Superintendent")[2] challenging that portion of a regulation promulgated by the Superintendent which established a fee schedule for thermography services under New York's no-fault automobile insurance law, the Motor Vehicle Insurance Reparations Law, N.Y.Ins.Law §§ 5101–5108 (McKinney 1985 & Supp.1990). Plaintiffs allege that the fee schedule was promulgated in violation of the New York Administrative Procedure Act and their rights to due process under the U.S. and New York State Constitutions, and that the fee schedule violates §§ 1 and 2 of the Sherman Act as well as their rights to equal protection under the federal and state constitutions. Upon commencing the action, plaintiffs moved for a preliminary injunction to enjoin the Superintendent from enforcing that portion of the regulation pertaining to the thermographic fee schedule and from adopting the same as a final rule, and staying the time period within which plaintiffs are required to challenge the enactment of the regulation under state law. At a hearing on the preliminary injunction motion on December 22, 1989, the Court denied the motion on the ground that plaintiffs failed to demonstrate irreparable harm. Plaintiffs' subsequent motion for reargument was denied. Presently before the Court is the Superintendent's motion to dismiss for failure to state a claim under the Sherman Act and for abstention. For the reasons below, the motion is granted on the grounds of abstention.

## I. BACKGROUND

The facts as alleged in the complaint and as adduced from the parties papers and from oral argument on the motion can be summarized as follows. New York Insurance Law § 5108 authorizes the Superintendent to establish fee schedules for health service charges under the no-fault automobile insurance law. N.Y.Ins.Law § 5108 (McKinney 1985). Section 5108(b) provides:

> The superintendent, after consulting with the chairman of the workers' compensation board and the commissioner of health, shall promulgate rules and regulations implementing and coordinating the provisions of this article and the workers' compensation law with respect to charges for the professional health services specified in [§ 5102(a)(1)], including the establishment of schedules for all such services for which schedules have not been prepared and established by the chairman of the workers' compensation board.

*Id.* § 5108(b). It is undisputed that thermography services fall within the professional health services specified in § 5102(a)(1). *See id.* § 5102(a)(1) (such services include "(i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; ... and

---

1. The complaint describes thermography as "a technique for detecting and measuring variations on the heat emitted by various regions of the body and transforming them into visible signals that can be recorded photographically." Complaint at para. 24.

2. This action was initially brought against James P. Corcoran ("Corcoran"), the former Superintendent of the Department of Insurance. Corcoran was succeeded by Wendy E. Cooper, Acting Superintendent, who is automatically substituted as defendant in this action. Defendant is referred to simply as the Superintendent. *See* Fed.R.Civ.P. 25(d)(1).

(iv) any other professional health services").

The Workers' Compensation Board ("WCB") promulgated a new fee schedule for medical and chiropractic services effective September 1, 1989. To conform the no-fault insurance fee schedules to the new workers' compensation schedules, as well as to revise no-fault insurance fee schedules for which no similar workers' compensation schedules exist, the Superintendent issued Amendment Fifteen to Regulation No. 83 ("Amendment Fifteen"), N.Y.Comp. Codes R. & Regs. tit. 11, pt. 68, as an emergency measure on or about September 27, 1989. The reasons for promulgating the amendment on an emergency basis were declared by the Superintendent in a "Statement of Emergency Measure" as follows:

> There is insufficient time to promulgate these increases by September 1, 1989. The Fifteenth Amendment to Regulation No. 83 must be adopted as an emergency measure, in order to conform no-fault with the Workers' Compensation schedules which are being revised effective September 1, 1989.

Pursuant to § 202 of the New York Administrative Procedure Act, Amendment Fifteen was also a proposed permanent regulation, which ultimately became effective December 27, 1989.

Because the WCB had not promulgated a fee schedule for thermography services, the Superintendent chose to promulgate a fee schedule for no-fault providers performing thermography services, and incorporated the fee schedule as Part M of Amendment Fifteen. Part M provides, however, that "[s]hould thermography be incorporated into the Workers' Compensation Fee Schedule at a future time, any provision which is inconsistent with this schedule shall be resolved in favor of the Worker's Compensation Fee Schedule."

Plaintiffs challenge the procedure employed by the Superintendent in promulgating Amendment Fifteen and the substantive determinations made and incorporated in the thermographic fee schedule. However, subsequent to filing this motion, on June 20, 1990, the Superintendent issued the Sixteenth Amendment to Regulation No. 83 which modified the challenged thermographic fee schedule. As explained in the "Statement of Emergency Measure":

> Subsequent to the promulgation of a new fee schedule applicable to thermographic services effective September 1, 1989, it has come to the attention of the Insurance Department that certain qualified practitioners may be unable to receive reimbursement for providing thermographic services when medically necessary. It was not the intent of the Insurance Department in adopting the fee schedule to exclude qualified practitioners from reimbursement. For the preservation of the general welfare and to correct this situation as quickly as possible, this Sixteenth Amendment to Regulation No. 83 must be adopted as as Emergency measure.

Essentially, the amended fee schedule eliminates certain "thermographic protocol" which had been imposed in the earlier fee schedule and which formed the basis of much of plaintiffs' challenge to the fee schedule. Notwithstanding Amendment Sixteen, plaintiffs still challenge the fee schedule.

As noted above, the Superintendent moves to dismiss the Sherman Act claims for failure to state a claim upon which relief can be granted and to dismiss the complaint based on *Burford* abstention. As for the Sherman Act claims, the Superintendent argues that the Sherman Act does not confer jurisdiction upon the Court because the Superintendent's actions are entitled to immunity from federal antitrust liability under the "state action" defense originating from *Parker v. Brown*, 317 U.S. 341, 351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). As for abstention, the Superintendent contends that abstention is appropriate under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In this respect, the Superintendent argues that New York has created a comprehensive insurance regulatory scheme and that the regulation of insurance represents a significant state interest such that the Court should decline to exercise its

jurisdiction over plaintiffs' claims. As discussed below, the Court finds that application of the *Burford* rule is warranted under the circumstances, and, therefore, does not address the Superintendent's challenge to the Sherman Act claims.

## II. DISCUSSION

The Superintendent urges the Court to decline to exercise jurisdiction over plaintiffs' claims under the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Superintendent argues that "plaintiffs have by-passed state channels of review and have challenged, in federal court, a specialized state regulatory scheme involving important state policy." Defendant's Memorandum of Law in Support of Motion to Dismiss, at 6. The parties rely on the Second Circuit's decision in *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 599 (2d Cir.1988), to support their respective positions.

"As a general rule, the federal courts are under a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Canady v. Koch*, 608 F.Supp. 1460, 1466 (S.D.N.Y.) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)), *aff'd, Cannady v. Valentin*, 768 F.2d 501 (2d Cir.1985). Nevertheless, the Supreme Court has established several abstention doctrines authorizing federal courts to refrain from exercising their jurisdiction under certain circumstances. As noted above, the Superintendent argues that *Burford*-type abstention is appropriate. As the Second Circuit explained in *Alliance:*

> The *Burford* rule applies in situations where it is prudent for a federal court to refrain from interfering in cases presenting state law issues relating to complex state regulations where the federal court decision may disrupt important state policies. Such abstention is appropriate when a federal case presents a difficult issue of state law, the resolution of which will have a significant impact on important state policies and for which the state has provided a comprehensive

regulatory system with channels for review by state courts or agencies. In short, federal courts should "abstain from interfering with specialized, ongoing state regulatory schemes."

*Alliance*, 854 F.2d at 599 (quoting *Levy v. Lewis*, 635 F.2d 960, 963 (2d Cir.1980)). Succinctly put, "under the *Burford* rule, abstention may be appropriate where a federal case raises 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *Id.* (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

In *Alliance*, a group of insurance trade associations, insurance companies and insurance policy holders challenged the constitutionality of two provisions of the New York Medical and Dental Malpractice and Professional Conduct Act of 1986. The challenged statutes imposed a moratorium on medical malpractice insolvencies by suspending the Superintendent's authority to liquidate or rehabilitate any medical malpractice insurer until a certain date, and authorized the Superintendent to stabilize medical malpractice rates without conducting hearings in which insurance companies could participate. The district court determined that abstention under *Burford* was appropriate, but the Second Circuit disagreed.

The court noted that under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, Congress entrusted the regulation of insurance to the states, and agreed with the defendents' argument that the insurance industry is subject to a comprehensive regulatory scheme under the New York Insurance Law. *See Alliance*, 854 F.2d at 600. The court found regulation of medical malpractice insurance a significant state interest and part of New York's comprehensive and complex insurance scheme. *Id.* Moreover, the court noted that state court judicial review is provided for under the scheme. *Id.* (citing N.Y.Civ.Prac. L. & R. 7801–06 (McKinney 1981 & Supp.1988)).

Reversing the district court's finding that *Burford* applied, the court reasoned:

> [T]he complaint here involves the unconstitutionality of a state statute on due process and taking grounds under the United States Constitution, rather than acts of the Superintendent under state law. There are no factual determinations of state agencies or courts at issue in this case. This case is a direct challenge to the constitutionality of a state statute, a controversy federal courts are particularly suited to adjudicate.

*Id.* at 601. In finding the considerations warranting *Burford* abstention absent, the court stated:

> There is no ambiguous state law issue. Specific channels of judicial review under state law are irrelevant to consideration of this federal question. There is no attempt to avoid any prior state court or agency determination. This case does not involve federal courts in supervising, interrupting or meddling in state policies by interfering in state regulatory matters.

*Id.*

Like the regulation of medical malpractice insurance, the regulation of the state's no-fault insurance scheme, which is part of the state's comprehensive and complex insurance regulatory scheme, undoubtedly represents a significant state interest. And, as part of the state's insurance regulatory scheme, the Superintendent's regulation of no-fault insurance is subject to state court judicial review. *See* N.Y.Ins.Law § 326(a) ("[A]ny order, regulation or decision of the superintendent is declared to be subject to judicial review in a proceeding under article seventy-eight of the civil practice law and rules. [N.Y.Civ.Prac. L. & R. 7801–06 (McKinney 1981 & Supp.1990) ]"). However, in contrast to the challenge to the state statute in *Alliance*, the present case involves a challenge to the actions of the Superintendent in implementing statutorily granted powers of establishing fee schedules governing the no-fault insurance

law. Plaintiffs do not challenge the constitutionality of the no-fault statute nor any other state statute. Rather, plaintiffs challenge actions taken by the Superintendent pursuant to state law. More particularly, they challenge the Superintendent's actions in promulgating a regulation pursuant to a presumably valid state law [3] designed to regulate the establishment of fee schedules for health services. It is apparent to the Court, based upon the allegations in the complaint and upon the papers and arguments of plaintiffs' counsel on the preliminary injunction and on the present motion, that the thrust of plaintiffs' challenge is aimed at determining whether the fee schedule was promulgated in compliance with state administrative procedures and whether the Superintendent was acting within the scope of his authority under state law in imposing certain provisions in the challenged fee schedule. Further, plaintiffs' counsel informed the Court at oral argument that it has an article 78 proceeding presently pending in the state court, but that the parties are not proceeding with that action pending a determination by this Court of the Superintendent's motion. Plainly, plaintiffs are challenging the administrative determinations of the Superintendent even before the state courts are given an opportunity to review the procedural and substantive propriety of those determinations.

Consequently, it is clear to the Court that refusal to abstain would result in a federal court interfering with the Superintendent's exercise of authority over the establishment of no-fault fee schedules, and, consequently, with the Superintendent's exercise of domestic policy in implementing this aspect of the state's insurance scheme. *See Alliance*, 854 F.2d at 600. This Court's refusal to intervene will not prevent plaintiffs from securing redress for any violation of their federally protected rights should plaintiffs deem themselves aggrieved following state court review. The fact that adequate state court review of the Superintendent's regulation remains avail-

---

**3.** Indeed, § 5108 was held to be constitutional in *Goldberg v. Corcoran,* 136 Misc.2d 213, 518 N.Y.S.2d 81 (Queens County 1987), *aff'd as mod-* *ified,* 153 A.D.2d 113, 549 N.Y.S.2d 503 (2d Dep't 1989).

able strongly indicates that intervention by a federal court is not warranted. *See Alabama Pub. Serv. Comm'n v. Southern Ry.*, 341 U.S. 341, 349–50, 71 S.Ct. 762, 768–69, 95 L.Ed. 1002 (1951).

## CONCLUSION

Based on the reasons above, the Superintendent's motion is granted to the extent that this Court abstains under the doctrine *Burford v. Sun Oil Co., supra.* Accordingly, the action is dismissed. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.