OPINION OF THE COURT
Stephen A. Bucaria, J.
This motion, by defendant (in the initial action) Dr. Robert Schepp and related parties (as plaintiffs in the declaratory judgment action), for summary judgment is granted in part and denied in part.
This is an action for a declaratory judgment that the defendant health care providers are ineligible for no-fault reimbursement because of failure to comply with state licensing requirements. In addition to declaratory relief, plaintiffs seek to recover previously paid no-fault claims, asserting causes of action for fraud and unjust enrichment.
Dr. Robert Schepp is a radiologist whose practice is devoted primarily to patients injured in automobile accidents. He practices through a group of professional service corporations which have submitted a large number of no-fault claims to the plaintiff insurance companies. The insurers have paid many of these claims but have denied many others on the ground that the professional corporations are ineligible for no-fault reimbursement. The insurers assert that the professional corporations are in violation of state licensing requirements because they are controlled by an individual not licensed to practice medicine. The insurers further argue that the corporations are ineligible for reimbursement because the radiology services were performed by independent contractors. Finally, the insurers argue that the corporations lack standing because they assigned the no-fault claims to finance companies pursuant to accounts receivable financing agreements.
*165 Prior to this declaratory judgment action, the corporations had commenced a large number of civil court actions and demanded a large number of arbitrations, seeking to recover no-fault claims. Some of the actions and arbitrations have been resolved, but many are still pending. Pursuant to a series of orders dated January 19, February 2, and March 27, 2006, the court stayed 344 actions and 44 proceedings to stay arbitration and consolidated them with the present declaratory judgment action.
The Schepp parties move for partial summary judgment, asserting that a professional corporation is ineligible for no-fault reimbursement only if the professional who formed the corporation intended to turn control over to an unlicensed individual. They additionally request partial summary judgment as to their standing and independent contractor defenses. Finally, they request partial summary judgment on the grounds that the insurers are raising a “collateral attack” on judgments and arbitration awards previously rendered in the Schepp parties’ favor. Before proceeding to the merits of the parties’ claims, the court will consider whether declaratory relief is appropriate. While declaratory judgment is discretionary, it is not an extraordinary remedy (Church of St. Paul & St. Andrew v Bar-wick, 67 NY2d 510, 518 [1986]; Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147 [1983]). Declaratory judgment may be an appropriate vehicle for settling disputes as to contract rights and obligations, where a mandatory mechanism is not provided in the agreement (Kalisch-Jarcho, Inc. v City of New York, 72 NY2d 727, 731-732 [1988]). Although the claimant has the option of submitting a no-fault dispute to arbitration, declaratory judgment may be an appropriate vehicle for settling disputes concerning no-fault benefits (see Bennett v State Farm Ins. Co., 147 AD2d 779 [3d Dept 1989]).
Declaratory judgment is not an exception to the principle of res judicata and does not permit a trial court to review another court’s judgment (Goldstein v Massachusetts Mut. Life Ins. Co., 32 AD3d 821 [2d Dept 2006]). Therefore, the concern that the court will “undo thousands of no fault claims” is misplaced. “[Declaratory judgment does not entail coercive relief, but only provides a declaration of rights between parties that, it is hoped, will forestall later litigation” (Morgenthau, 59 NY2d at 148). Thus, declaratory relief by this court will not, of itself, result in the vacating of any other court’s judgment. To the extent that this court’s decision is inconsistent with any previously granted *166 arbitration award, it is not intended to provide grounds for vacatur (see CPLR 7511 [a]). To the extent that the court’s decision is inconsistent with the judgment of any other court, whether to grant relief from that judgment is within the discretion of that court (see Ruggiero v Long Is. R.R., 161 AD2d 622 [2d Dept 1990]). The court notes that plaintiffs are not requesting this court to take any action with respect to any judgment or arbitration award. Furthermore, the insurers themselves have requested declaratory relief in one of the consolidated declaratory judgment actions. Because of the large number of actions and arbitrations involving the common question of the Schepp entities’ eligibility for no-fault reimbursement, the court concludes that declaratory relief is appropriate.
Pursuant to Insurance Law § 5103, every automobile insurance policy must provide for payment of so-called “no fault,” or “first party benefits,” to occupants of a covered vehicle who sustain loss through the use or operation of the vehicle. Section 5102 (b) of the Insurance Law defines “[f|irst party benefits” as payment to reimburse the injured person for “basic economic loss,” less certain deductions. Under Insurance Law § 5102 (a), “basic economic loss” means necessary medical expenses and lost earnings up to $50,000. Thus, in accordance with the statutory scheme, expenses for necessary x-rays and MRIs are ordinarily reimbursable no-fault benefits.
However, Insurance Department Regulations (11 NYCRR) § 65-3.16 (a) (12) provides
“A provider of health care services is not eligible for reimbursement under § 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or . . . any other state in which such service is performed.”
If the health care provider is a professional service corporation, section 1507 of the Business Corporation Law requires that any individual who holds shares in the professional corporation be licensed to practice the profession. Section 1508 of the Business Corporation Law provides that an individual must be licensed to be a director or officer of a professional service corporation. The insurers assert that Dr. Schepp’s professional corporations fail to meet state licensing requirements because they are owned and controlled by management companies, which are controlled by an unlicensed individual.
In State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313, 319 [2005]), known to the no-fault bar as “Mallela III,” the Court *167 of Appeals held that an insurer may withhold payment for medical services provided by “fraudulently incorporated” enterprises to which patients have assigned their no-fault claims. In Mallela III, unlicensed individuals paid physicians to use their names on certificates of incorporation and other documents filed with the Department of State to establish medical service corporations (4 NY3d at 319). Once the medical service corporations were established under the cover of the nominal physician-owners, the nonphysicians actually operated the companies (id.). The nonphysicians caused the corporations to hire management companies owned by the nonphysicians, which billed the medical corporations at inflated rates for routine services (id. at 319-320). Thus, the corporations’ profits did not go to the nominal owners but were channeled to the nonphysicians who owned the management companies. The court held that although the patients received appropriate care from licensed professionals, the insurers could withhold payment for no-fault benefits.
In moving for partial summary judgment, the Schepp parties argue that a professional service corporation is ineligible for no-fault reimbursement only if it was “fraudulently incorporated.” Movants construe this term as meaning that the professional corporation was formed by a licensed professional who intended to turn control of the corporation over to an unlicensed party. They assert that Dr. Schepp’s professional corporations were not fraudulently incorporated because Dr. Schepp intended to retain control when he formed the professional corporations.
In Mallela III, the question of whether an “unlawfully incorporated” medical corporation was eligible for no-fault law reimbursement had been certified to the Court of Appeals by the United States Court of Appeals for the Second Circuit (State Farm Mut. Auto. Ins. Co. v Mallela, 372 F3d 500, 501 [2d Cir 2004]). In certifying this question, the Second Circuit noted our state’s longstanding concern that the “corporate practice of medicine” would create ethical conflicts and undermine the quality of care afforded to patients (372 F3d at 503). Additionally, the court noted that the corporate practice of medicine was associated with more traditional forms of fraud, such as billing for services not provided, billing for services that were medically unnecessary, and billing for services at the wrong rate (id. at 504, 507).
In answering the certified question, our Court of Appeals stated that the fraud was “in the corporate form rather than in the quality of care provided” (Mallela III, 4 NY3d at 320). The *168 Court indicated that mere failure to observe corporate formalities would not render the provider ineligible {id. at 322). However, “willful and material failure to abide by state and local law,” conduct tantamount to fraud, would render the provider ineligible for no-fault reimbursement {id. at 321). The Court further stated that if a medical service corporation is “fraudulently licensed,” it is not entitled to be reimbursed for no-fault benefits (Mallela, 4 NY3d at 321, 322). Thus, the Court of Appeals intimated that a medical service corporation will be ineligible for no-fault reimbursement if it is in violation of licensing requirements, regardless of whether the doctor intended to yield control to unlicensed parties at the time he formed the corporation.
Moreover, 11 NYCRR 65-3.16 (a) (12) renders a health care provider ineligible for reimbursement if it fails to meet “any applicable” licensing requirement. The regulation does not render a provider ineligible only when it fails to meet licensing requirements at the time of its incorporation. In view of the fraudulent practices associated with the corporate practice of medicine, a regulation prohibiting reimbursement to unlicensed providers is eminently reasonable. Thus, if the Schepp entities are under the control of an unlicensed individual, the insurers will be entitled to a declaration that they may deny defendants no-fault reimbursement, regardless of whether defendants were “fraudulently incorporated.” The declaratory judgment plaintiffs’ motion for partial summary judgment on the ground that the professional corporations were not fraudulently incorporated is denied.
In Mallela III, the Court of Appeals stated that “no cause of action for fraud or unjust enrichment [will] lie for any payments made by the carriers before [the] regulation’s effective date of April 4, 2002” (4 NY3d at 322). Thus, insurers may not recover no-fault claims paid prior to April 4, 2002 on the ground that the provider was ineligible for reimbursement at the time the claim was submitted. Nevertheless, Mallela III left open the question of whether insurers may deny claims submitted prior to April 4, 2002 on the ground that the provider subsequently became ineligible for no-fault reimbursement. Movants argue that the insurers may not deny such claims on the ground of current ineligibility and may not predicate a cause of action for fraud on claims submitted prior to March 29, 2005, the date of the Mallela III decision.
Movants stress that, prior to Mallela III, 11 NYCRR 65-3.16 had not been interpreted as entitling insurers to deny no-fault *169 reimbursement to health care providers who were not in compliance with licensing requirements. Indeed, in certifying the question to our Court of Appeals, the Second Circuit noted that New York law was unclear and no “controlling precedent” governed the case (372 F3d at 507).
Subsequently, in Allstate Ins. Co. v Belt Parkway Imaging, PC. (33 AD3d 407, 408 [1st Dept 2006]), the Appellate Division held that insurers could deny claims for services performed prior to April 4, 2002 because the “clear import” of the regulation was that unlicensed providers were no longer eligible for reimbursement as of the regulation’s effective date. The court reasoned that “[a]meliorative or remedial legislation” should be given retroactive effect to effectuate its “beneficial purpose,” and similar effect should be given to an ameliorative or remedial regulation (id. at 408). The court noted that the purpose of 11 NYCRR 65-3.16 was “to combat fraud,” and the regulation’s notice of adoption urged that the public receive “the benefits of reduced fraud and abuse ... at the earliest possible moment” (33 AD3d at 409). The court ruled that section 65-3.16 did not “impair[ ] vested rights” and noted that Mallela itself involved “pre-April 4, 2002 claims” (33 AD3d at 409, 408). Thus, the insurers will be entitled to a further declaration that they may deny no-fault claims for services performed prior to April 4, 2002, if they establish that the Schepp entities are currently ineligible for no-fault reimbursement. Defendants’ motion for partial summary judgment is granted as to claims paid prior to April 4, 2002 but denied as to pre-April 4, 2002 claims which are still pending.
Movants argue that a cause of action for fraud, based upon a no-fault claim submitted prior to the date of Mallela III, is legally insufficient. The essential elements of a cause of action for fraud are a representation of a material existing fact, falsity, scienter, deception, and injury (New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995]). The movants argue that their ineligibility for no-fault reimbursement was not an “existing fact” before Mallela III was decided. Thus, they argue that the insurers may not assert a cause of action for fraud based on pre-Mallela III claims.
The eligibility of a professional corporation for no-fault reimbursement is a mixed question of fact and law which “turns on the combined consideration of factual and legal factors” (Matter of Fisher [Levine], 36 NY2d 146, 150 [1975]). Nevertheless, a representation as to the corporation’s eligibility for no- *170 fault reimbursement may provide the basis for a fraud cause of action. The Court of Appeals has stated that it is an “oversimple dichotomy” to distinguish between law and fact for the purposes of an action in deceit (National Conversion Corp. v Cedar Bldg. Corp., 23 NY2d 621, 627 [1969]). “[A] statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case” (id. at 628, quoting Prosser, Torts, at 741 [3d ed]). Indeed, a false opinion of the law, if represented as a “sincere opinion,” may, as any other opinion, give rise to a fraud claim if it is reasonably relied upon by the other party (id.). A misrepresentation as to the law is more likely to induce reasonable reliance where it is made by one possessing superior knowledge as to the subject of the representation (Lukowsky v Shalit, 110 AD2d 563, 567 [1st Dept 1985]). Since a misrepresentation as to the law may give rise to an action for fraud, so may a misrepresentation as to a mixed question of fact and law, such as eligibility for no-fault reimbursement.
Prior to Mallela III, Dr. Schepp may not have known that his professional corporations were ineligible for no-fault reimbursement. However, in submitting no-fault claims, the Schepp entities impliedly represented that they were wholly owned by licensed physicians. They clearly had superior knowledge as to the licensing status of the individual in control of the professional corporations. If a representation as to licensing status was false, the insurers suffered damages by paying the claims in reliance upon the representation, even though the legal effect of the falsity had not yet been determined. In Allstate Ins. (supra), the Appellate Division affirmed the dismissal of the insurer’s cause of action for fraud based upon payments made prior to April 4, 2002. The court’s failure to dismiss a fraud claim as to payments made prior to the date of Mallela III confirms the viability of a fraud cause of action. The motion for partial summary judgment is denied as to claims submitted subsequent to April 4, 2002 but prior to the date of the Mallela III decision.
The movants argue that the insurers’ fraud causes of action have not been stated in sufficient detail pursuant to CPLR 3016 (b). The purpose of this pleading requirement is to inform a defendant of the incidents which form the basis of the action (Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 491 [2008]). Where it is impossible to state the circumstances constituting the fraud in detail, CPLR 3016 (b) should not be so strictly *171 interpreted as to prevent plaintiff from asserting an otherwise valid cause of action (id.). As noted above, in submitting no-fault claims, the Schepp entities impliedly represented that they were wholly owned by licensed physicians. While the extent to which they relied upon that representation may vary with the circumstances of the individual claim, the insurers have alleged sufficient detail to comply with CPLR 3016 (b)’s pleading requirement.
11 NYCRR 65-3.11 (a) provides, “An insurer shall pay benefits for any element of loss . . . directly to the applicant or . . . upon assignment by the applicant . . . shall pay benefits directly to providers of health care services.” According to the insurers, the Department of Insurance has issued an opinion letter to the effect that a health care provider is not permitted to seek reimbursement for services provided by an independent contractor (see NY Ins Dept op letter, Feb. 21, 2001). The movants do not dispute the insurers’ interpretation of the opinion letter but claim that, as a matter of law, the radiology technicians who performed the services were employees of the professional corporations.
On a motion for summary judgment, it is the proponent’s burden to make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 384 [2005]). Failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (id.). However, if this showing is made, the burden shifts to the party opposing the summary judgment motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
The Schepp entities submit the affidavit of Dr. Schepp which states that all of the MRI technicians worked under his supervision and control. Dr. Schepp further states that while the technicians worked for different corporations, they were paid by Robert Scott Schepp, M.D., EC., they received W-2 tax forms, and their salary expenses were apportioned among the various corporations. The court concludes that the Schepp entities have established, prima facie, that the MRI technicians were employees, and the burden shifts to the insurers to come forward with evidence showing that the technicians were independent contractors.
*172 In opposition to the motion, the insurers have submitted considerable evidence indicating that Dr. Schepp may have yielded control of the professional corporations to a management company. However, they have submitted no evidence that the MRI technicians were not employees of the professional corporations. The court concludes that the Schepp entities are entitled to a declaration that the professional corporations are not ineligible for no-fault reimbursement by reason of utilizing MRI technicians who were not employees. The motion for partial summary judgment is granted as to the independent contractor defense.
The insurers argue that the professional corporations lack standing because they assigned their no-fault claims to finance companies pursuant to accounts receivable financing agreements. The movants respond that they purported to assign only the proceeds because a medical provider is not permitted to assign a no-fault claim.
An unequivocal and complete assignment extinguishes the assignor’s rights against the obligor and leaves the assignor without standing to sue the obligor upon the assigned claim (Aaron Ferer & Sons Ltd. v Chase Manhattan Bank, N.A., 731 F2d 112, 125 [2d Cir 1984]). However, implicit in any assignment for security is a reservation to the assignor of a right to pursue the claim if the assignee chooses not to do so (Fifty States Mgt. Corp. v Pioneer Auto Parks, 44 AD2d 887 [4th Dept 1974]). Where no-fault claims are factored, it is particularly appropriate for the assignor to retain standing because the assignee is not permitted to seek no-fault arbitration (Insurance Law § 5106 [b]; Insurance Department Regulations [11 NYCRR] § 65-4.2 [b]).
Article 9 of the Uniform Commercial Code, governing secured transactions, ordinarily applies to a sale of accounts intended as a financing arrangement (UCC 9-109 [a] [3]). Pursuant to UCC 9-406 (a), an account debtor may discharge its obligation by paying the assignor, until the account debtor has received notice of the assignment. Thus, a no-fault insurer who pays the health care provider is not exposed to the risk of double-paying a factored claim. The court concludes that the Schepp entities are entitled to a declaration that the professional corporations are not ineligible for no-fault reimbursement by reason of having assigned the claims pursuant to an accounts receivable financing agree *173 ment. The motion for partial summary judgment is granted as to insurers’ defense of lack of standing.
The Schepp entities’ motion for summary judgment is granted and denied to the extent indicated above. The court will defer granting a declaratory judgment in accordance with this decision pending resolution of whether the professional corporations are controlled by an individual not licensed to practice medicine.