[864 NE2d 1279, 832 NYS2d 880]

Nyack Hospital, as Assignee of Allen Zadwdyas, Appellant, et al., Plaintiff, v General Motors Acceptance Corporation et al., Respondents.

Argued February 8, 2007; decided March 22, 2007

**POINTS OF COUNSEL**

*Joseph Henig, P.C.,* Bellmore (*Joseph Henig* and *Gregory Henig* of counsel), for appellant. I. Plaintiff's bill exceeded the policy limits, and defendant had no authority to pay subsequent claims that reduced the available proceeds before paying plaintiff. (*Presbyterian Hosp. in City of N.Y. v Atlanta Cas. Co.,* 210 AD2d 210; *Mary Immaculate Hosp. v Allstate Ins. Co.,* 5 AD3d 742.) II. Defendant had a duty to hold the proceeds for plaintiff's bill in reserve pending receipt of the requested verification. (*Maxwell v State Farm Mut. Auto. Ins. Co.,* 92 AD2d 1049.) III. The No-Fault Law does not authorize the insurer to defer payments under the $50,000 basic economic loss coverage until the insured returns an optional basic economic loss election form.

*Freiberg & Peck, LLP,* New York City (*Craig J. Freiberg* and *Yilo J. Kang* of counsel), for respondents. I. Under the no-fault regulations, defendants-respondents properly handled the disputed claim. (*Marsala v Weinraub,* 208 AD2d 689; *Sega v State of New York,* 60 NY2d 183; *Didner v Keene Corp.,* 188 AD2d 15; *Schrader v Carney,* 180 AD2d 200; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274.) II. Payment of the disputed claim was properly deferred prior to the return of the optional basic economic loss election form by the claimant. (*New York & Presbyt. Hosp. v Progressive Cas. Ins. Co.,* 5 AD3d 568; *Presbyterian Hosp. in City of N.Y. v Empire Ins. Co.,* 220 AD2d 733.)

**OPINION OF THE COURT**

READ, J.

We are asked in this no-fault action to decide whether an

insurer that is waiting for information to verify a pending claim that causes aggregate claims to exceed $50,000 is prohibited by the priority-of-payment regulation (11 NYCRR 65-3.15) from paying already verified claims in the meantime. For the reasons that follow, we conclude that the priority-of-payment regulation does not preclude these payments.

I.

From July 15, 2003 to August 6, 2003, plaintiff Nyack Hospital (the hospital) treated Allen Zadwdyas (the patient) for multiple significant traumatic injuries that he suffered in an automobile accident. The patient was a covered person under an automobile insurance policy issued by defendants General Motors Acceptance Corporation and GMAC Insurance Company Online, Inc. (collectively, the insurer). The policy included the mandatory no-fault endorsement, providing coverage for basic economic loss up to $50,000 per person/per accident, with additional coverage for optional basic economic loss (OBEL) of $25,000 per person.[1]

The hospital, as the patient's assignee, completed and sent the insurer the proper forms[2] for claiming no-fault benefits for medical services rendered to the patient during his hospital stay. The insurer received these forms on August 20, 2003; the hospital's claim totaled $74,489.28. Sixteen business days later,[3] on September 12, 2003, the insurer asked the hospital to supply the patient's complete inpatient hospital records. According to the insurer's claims adjuster, this "additional verification" was necessary "[i]n order to determine whether the bill should be paid or denied and to properly assess the medical necessity of

---

**1.** "Basic economic loss" is defined to include up to $50,000 per person for certain health service and other reasonable and necessary expenses as well as lost earnings (*see* Insurance Law § 5102 [a], [b]). "Basic economic loss" also includes "an additional option to purchase, for an additional premium, an additional [$25,000] of coverage which the insured . . . may specify will be applied to loss of earnings from work and/or psychiatric, physical or occupational therapy and rehabilitation after the initial [$50,000] of basic economic loss has been exhausted" (Insurance Law § 5102 [a] [5]).

**2.** The hospital sent a completed hospital facility form (NYS Form NF-5) and a uniform billing form (*see* 11 NYCRR 65-3.5 [g] [which requires an insurer to accept these forms in lieu of the prescribed application for motor vehicle no-fault benefits (NYS Form NF-2) and verification of hospital treatment (NYS Form NF-4)]).

**3.** Three weekends, including the three-day Labor Day weekend, elapsed between August 20, 2003 and September 12, 2003.

the services rendered" (*see* 11 NYCRR 65-3.5 [b] [which provides that "(s)ubsequent to the receipt of one or more of the completed verification forms (here, the NYS Form NF-5 and the UBF-1), any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms"]).

While awaiting the hospital's response, the insurer paid claims for the patient's lost earnings, and claims from other health service providers. The insurer received the additional verification from the hospital on October 20, 2003. According to the insurer, it had by then made payments on other claims totaling $29,811.12,[4] so that only $20,188.88 of the $50,000 basic economic loss coverage remained.

On November 11, 2003, the insurer sent the patient an OBEL-election form (*see* 11 NYCRR 65-3.7 [b] [which directs an insurer to mail this form to an OBEL-eligible person within 15 calendar days after the insurer has received claims aggregating $30,000 in basic economic loss]).[5] On November 21, 2003, the insurer notified the hospital that action on its claim was being delayed pending its receipt of this form. The insurer relied on 11 NYCRR 65-3.8 (a) (2), which mandates an insurer to "defer payment of OBEL benefits for claims submitted by or on behalf of the [OBEL-eligible person] until an OBEL option has been elected," and requires the insurer to "pay or deny such claims under OBEL coverage within 30 calendar days" after an election is made. On November 24, 2003, the insurer received the completed OBEL-election form. The patient chose to have lost earnings paid from the OBEL coverage.

---

4. The payment log and the claims adjuster's affidavit, however, seem to indicate that while the insurer had *received* 17 claims totaling $29,811.12 by October 20, 2003, it had only paid 15 of those claims as of that date. The remaining two claims appear to have been paid in November 2003 for services rendered or expenses incurred after the patient's stay at the hospital.

5. The OBEL election form asks an OBEL-eligible person to designate OBEL benefits to one of four categories of basic economic loss: (1) basic economic loss including health service expenses, loss of earnings from work, and other reasonable and necessary expenses; or (2) loss of earnings from work, less statutory offsets; or (3) psychiatric, physical or occupational therapy and rehabilitation; or (4) a combination of options (2) and (3) (*see* 11 NYCRR Appendix 13 [NYS Form NF-13]). We note that the insurer mailed the OBEL election form to the patient 22 calendar days after the date (October 20, 2003) on which the insurer asserts its obligation to do so was triggered, rather than within 15 calendar days as required by 11 NYCRR 65-3.7 (b). The tardiness of this mailing does not affect the outcome of the appeal.

The insurer asserts that only $19,325.67 of the $50,000 basic economic loss coverage remained as of November 24, 2003 when it received the patient's completed OBEL-election form. On December 9, 2003, the insurer issued the hospital two checks totaling this amount. On that same date, the insurer also notified the hospital by letter that personal injury protection and medical benefits under the policy had been exhausted by these payments.

The hospital commenced this action in December 2003, alleging that the insurer had not paid or denied its $74,489.28 claim within 30 days as required by Insurance Law § 5106 (a) and 11 NYCRR 65-3.8 (a) (1), and seeking this amount plus statutory interest and attorneys' fees. After the hospital moved for summary judgment, the insurer cross-moved for summary judgment dismissing the complaint, contending that the December 9, 2003 payments were timely, and that it was not required to pay sums in excess of policy limits. In reply, the hospital argued that the insurer violated a no-fault regulation governing priority of payment when it paid health service providers who submitted their claims after August 20, 2003 before paying the hospital's claim. The regulation relied on by the hospital states that

> "[w]hen claims aggregate to more than $50,000, payments for basic economic loss shall be made to the applicant and/or an assignee in the order in which each service was rendered or each expense was incurred, provided claims therefor were made to the insurer prior to the exhaustion of the $50,000. If the insurer pays the $50,000 before receiving claims for services rendered prior in time to those which were paid, the insurer will not be liable to pay such late claims. If the insurer receives claims of a number of providers of services, at the same time, the payments shall be made in the order of rendition of services" (*see* 11 NYCRR 65-3.15).

On August 16, 2004, Supreme Court denied the hospital's motion and granted the insurer's cross motion to dismiss the complaint. On December 27, 2005, the Appellate Division affirmed, holding that "under the circumstances presented, the insurer did not violate 11 NYCRR 65-3.15, as the [hospital's] initial claim was premature when submitted [on August 20, 2003], and was not complete until the insurer received additional verification of the claim [on October 20, 2003]" (27 AD3d 96, 97 [2d Dept 2005]). In addition, the court determined

that the applicable limitation period for the insurer to pay or deny the hospital's claim did not start to run until November 24, 2003, when the insurer received the patient's completed OBEL-election form. Accordingly, the Appellate Division concluded that the insurer's payment of $19,325.67 (the balance of the $50,000 basic economic loss coverage as of November 24, 2003) to the hospital on December 9, 2003 was correct as to the amount due and timely. The insurer was "not required to pay the remaining hospital bill balance of $55,163.61, as the policy limits had been exhausted by the [insurer's $19,325.67] payment to [the hospital]" (*id.* at 101). We subsequently granted the hospital permission to appeal.

## II.

The hospital argues that once it submitted the requisite forms to make a claim that caused aggregate claims to exceed $50,000, the insurer had a duty under 11 NYCRR 65-3.15, the priority-of-payment regulation, "to keep the money that was due the [hospital] in reserve (up to the policy limits)" of $50,000. In particular, the hospital contends that $35,198.09 in policy proceeds remained unpaid and available on August 20, 2003, and that the insurer should have delayed paying no-fault claims subsequently received from other health service providers, pending the hospital's response to the insurer's request for additional verification. Thus, the hospital seeks to recover the moneys "available under the . . . basic economic [loss] policy as of August 20, 2003, less any sums paid to the [hospital] or paid out prior to August 20, 2003."

The no-fault regulations provide that "[n]o-[f]ault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant information requested pursuant to section 65-3.5" (11 NYCRR 65-3.8 [a] [1]). With exceptions not relevant to this appeal, an insurer may not deny a claim "prior to its receipt of verification of all of the relevant information requested pursuant to section 65-3.5" (11 NYCRR 65-3.8 [b] [3]). Section 65-3.5 (b), in turn, authorizes the insurer to request "any additional verification required . . . to establish proof of claim . . . within 15 business days of receipt of the prescribed verification forms." This language contemplates that an insurer must pay or deny only a verified claim—that is, a claim that has been verified to the extent compliance with section 65-3.5 dictates in the particular case—within 30 calendar days of receipt; and, conversely, is not obligated to pay any claim until it has been so verified.

To adopt the priority-of-payment regime advocated by the hospital, we would have to interpret "claims" in section 65-3.15 to encompass claims that have not been verified in accordance with section 65-3.5. This approach runs counter to the no-fault regulatory scheme, which is designed to promote prompt payment of legitimate claims. For example, under the hospital's theory, the insurer in this case could not have paid any verified claims submitted after August 20, 2003 by other health service providers or the patient even though the regulations clearly required the insurer to pay these claims within 30 calendar days after receipt. Further, under the hospital's theory, once a health service provider submits a bare-bones claim causing policy limits to be exceeded and thereby blocks other payments, it would have significantly less incentive to supply the information necessary to substantiate its claim in a timely fashion.

As we pointed out in *Matter of Medical Socy. of State of N.Y. v Serio* (100 NY2d 854, 867 [2003]), the Superintendent of Insurance, in adopting revised Regulation 68 (repealing and replacing the prior 11 NYCRR part 65), determined that these regulations were "the most effective means of advancing the legislative intent of providing prompt payment of [no-fault] benefits as the loss is incurred, while reducing rampant abuse." To read section 65-3.15 in isolation and apart from the rest of the revised no-fault program—which sets tight deadlines for submittal and payment and stresses the justifying of claims—would frustrate this legislative intent.

Next, the insurer requested the additional verification from the hospital 16 business days after receipt of the claim rather than within 15 business days, as required by 11 NYCRR 65-3.5 (b). Section 65-3.8 (j), however, specifies that "[f]or the purposes of counting the 30 calendar days after proof of claim, wherein the claim becomes overdue . . . with the exception of section 65-3.6 of this subpart [65-3], any deviation from the rules set out in this section shall reduce the 30 calendar days allowed." Accordingly, the insurer was required to pay or deny the hospital's claim no later than 29 days[6] after October 20, 2003, when the additional verification was received, or by November

---

**6.** Section 65-3.8 (j) refers to time frames specified "in *this section*" (emphasis added), which would seem to limit its ambit to deadlines in section 65-3.8. If this were the Superintendent's intent, however, the explicit exception in section 65-3.8 (j) for time frames set forth in section 65-3.6 would be unnecessary. In addition, the example illustrating how section 65-3.8 (j) works is keyed into the five-business-day deadline in section 65-3.4 (b). We note that

18, 2003. This deadline was not extended by the patient's OBEL-eligibility: section 65-3.8 (a) (2) of title 11 only directs the insurer to defer payment of no-fault benefits from the $25,000 OBEL coverage until an OBEL option has been elected; it does not command the insurer to defer payment of no-fault benefits from the $50,000 basic economic loss coverage as well.

In sum, the priority-of-payment regulation came into play on October 20, 2003 when the insurer received the requested inpatient hospital records, which established verified claims aggregating more than $50,000. At that point, the insurer should have paid the hospital ahead of any other unpaid verified claims for services rendered or expenses incurred later than the services billed by the hospital, up to the policy's limits. The insurer was required to pay these moneys to the hospital no later than November 18, 2003.

Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendants' motion for summary judgment and remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH and PIGOTT concur; Judge JONES taking no part.

Order modified, etc.

the provisions corresponding to sections 65-3.8 (j) and 65-3.5 (b) in former part 65 (former 11 NYCRR 65.15 [g] [10] and 65.15 [d] [2] respectively) were included in the same section.