OPINION OF THE COURT
Fred J. Hirsh, J.
Defendant moves for summary judgment dismissing this action to recover first-party no-fault benefits. Plaintiff cross-moves for summary judgment.
Background
This action involves another variation of what has become an increasingly common and troublesome development in the area of claims to obtain payment of first-party no-fault benefits— insurers requesting a claimant provider furnish as verification information about the claimant provider’s corporate structure and ownership. When the claimant provider fails or refuses to provide the information and commences an action to recover first-party no-fault benefits, the insurer moves for summary judgment dismissing the action on the grounds the claimant provider has not responded to verification requests.
*570 These motions raise issues that have been addressed in the no-fault statute (Insurance Law art 51) or the no-fault regulations (11 NYCRR part 65) and which had not previously been addressed in the case law, to wit:
(1) Can a provider object to a verification request?
(2) What is the effect of the objection to the verification request?
Victory Medical Diagnostics, P.C. (Victory) performed a neurological consult and diagnostic testing on Miguel Rojas on March 9, 2011. Rojas assigned his no-fault benefits to Victory. Victory submitted the claim for payment to defendant Nationwide Property and Casualty Insurance Company (Nationwide).
Nationwide received the claim and by letter dated April 5, 2011 requested verification including a copy of Victory’s SS-4, taxpayer identification number (TIN) and completed W-9, copies of any lease agreements or other agreements relating to the use or rental of the facility and/or equipment where the services were rendered, names and addresses of the owners of any past and present billing/management company used by Victory, copies of any written contracts with such company or, if the agreement is oral, a summary of the agreement including the date of commencement and a letter of medical necessity explaining why the testing was required including an explanation as to how the testing would help aid in developing a treatment plan or change the treatment plan.
Victory responded to Nationwide’s request by providing Nationwide with a copy of its SS-4, TIN acknowledgment, a W-9, a copy of the medical license of Ahmed Adel Elsoury, the physician who performed the diagnostic tests, Dr. Elsoury’s registration certificate indicating he is licensed as a physician in New York through July 31, 2012, a copy of Victory’s certificate of incorporation that lists Dr. Elsoury as Victory’s sole, original shareholder, director and officer and a copy of the certificate of filing acknowledging that Victory’s certificate of incorporation was filed with the Secretary of State on January 3, 2011. Victory did not provide a letter of medical necessity, the leases or the management agreements.
By letter dated May 5, 2011, Nationwide acknowledged receipt of the SS-4, Internal Revenue Service (IRS) TIN, W-9 and other corporate documents. Nationwide’s letter reiterated Nationwide’s request for copies of lease agreements regarding the premises and/or equipment where the services rendered in con *571 nection with this claim were provided, the name and address of any billing or management company used by Victory and copies of any written agreements between Victory and the billing or management company or a summary of the agreement if the agreement was oral.[1] The letter further advised Victory an insurer may demand verification of the claim and does not have to pay or deny the claim until all requested verification is received. Nationwide advised Victory it would not pay or deny the claim until the remaining items requested by way of verification have been provided. Even though Victory had not provided a letter of medical necessity, Nationwide’s May 5, 2011 letter did not request a letter of medical necessity.
Victory responded to Nationwide’s May 5, 2011 letter by letter dated July 26, 2011. The letter advised Nationwide that Victory considered this verification demand as overly burdensome and an abuse of the verification process. The letter cited the provisions of 11 NYCRR 65-3.2 that state insurers should not request verification unless there is a good faith basis for doing so, claims should be paid promptly and fairly and an insurer should not treat the claimant as an adversary.
The letter requested Nationwide provide Victory with “a detailed explanation of how and why this information is essential to this particular claim as well as a detailed explanation of what has prompted this request pursuant to 11 NYCRR section 65-3.2(e) and section 65-3.16(a).” The letter further requested Nationwide provide an explanation of its good cause basis for requesting this information as well as an itemization of all acts “tantamount to fraud.” The letter then reminded Nationwide of its obligation under 11 NYCRR 65-3.2 (f) to promptly respond to all communications from applicants.
Nationwide responded to Victory’s July 26, 2011 letter by letter dated August 30, 2011. Nationwide’s letter cited to the provisions of the Business Corporation Law that prohibit any person other than a licensed professional from having an interest in the professional corporation and the provision of 11 NYCRR 65-3.5 (c) that grants insurers the right to demand “all items necessary to verify the claim.” The letter stated “Mallela v State Farm Ins. Co. (US District Ct. March 29, 2005)” granted *572 insurers the right to look behind the certificate of incorporation’s statement indicating the physician is the owner.[2]
The letter stated Nationwide needed copies of the leases and management agreements to verify that Victory is a legally formed professional corporation. The letter did not advise Victory of Nationwide’s basis for the request or its basis for suspecting Victory was improperly incorporated. The letter concluded by advising Victory the claim will not be considered until the requested material has been provided.
Victory did not respond to Nationwide’s August 30, 2011 letter or provide Nationwide with copies of the leases for the facilities and equipment, management agreements or, if oral, a summary of the management agreements. Nationwide did not pay or deny the claim. Victory commenced this action seeking to recover the unpaid claim.
In support of the motion for summary judgment, Nationwide asserts it requested verification because it could not confirm Victory’s tax identification number with Insurance Services Office, Inc. (ISO); the treating physician, Joseph Raia, owns and treats through multiple other entities; Dr. Elsoury is the listed owner of at least two other medical providers; the address at which the services were rendered has at least four other medical providers; Victory’s billing address is the address for several other medical providers; and Great Liberty Funding Inc. and Wilk Real Estate Ltd. use or used 614 Richmond Road, 2nd Floor, Staten Island, New York 10304 as their address.
Discussion
An insurer must pay or deny a claim in whole or in part within 30 days of receipt or receipt of verification. (11 NYCRR 65-3.8 [a].)
An insurer can extend or toll its time to pay or deny a claim by demanding verification within 30 days of receipt of the claim. (Nyack Hosp. v General Motors Acceptance Corp., 8 NY3d 294 [2007].) An insurer does not have to pay or deny a claim until it receives all timely requested verification. (St. Barnabas Hosp. v American Tr. Ins. Co., 57 AD3d 517 [2d Dept 2008]; Mount Sinai Hosp. v Chubb Group of Ins. Cos., 43 AD3d 889 [2d Dept 2007]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568 [2d Dept 2004]; 11 NYCRR 65-3.5 [c].)
*573 The no-fault regulations do not specifically define or limit the information or documentation an insurer may request through verification. An insurer can request “all items necessary to verify the claim directly from the parties from whom such verification was requested.” (11 NYCRR 65-3.5 [c].) The only limitation on verification contained in the regulations is an insurer should not “demand verification of facts unless there are good reasons to do so.” (11 NYCRR 65-3.2 [c].) Neither the no-fault law nor the no-fault regulations establish a mechanism or procedure by which a claimant provider can contest or challenge a request for verification on the grounds it is improper, unduly burdensome, unfounded, unnecessary or harassing.
The courts have suggested a provider who receives an improper, unduly burdensome, unfounded, harassing and/or unnecessary verification request can preserve the right to object by responding and objecting to the verification request. (See Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 262 AD2d 553 [2d Dept 1999] [inaction was not a proper response to “unintelligible” verification requests; the provider should have resolved the confusion through further correspondence]; Crescent Radiology, PLLC v American Tr. Ins. Co., 31 Misc 3d 134[A], 2011 NY Slip Op 50622[U] [App Term, 9th & 10th Jud Dists 2011] [a party waives its right to object to an examination under oath (EUO) if it does not object to the EUO request when the request is received];[3] Urban Radiology, P.C. v Tri-State Consumer Ins. Co., 27 Misc 3d 140[A], 2010 NY Slip Op 50987[U] [App Term, 2d, 11th & 13th Jud Dists 2010] [the provider of diagnostic testing should have responded to a verification request seeking a letter of medical necessity by advising the insurer to seek a letter of medical necessity for the diagnostic testing from the referring physician].) These cases suggest a provider can raise and preserve objections to verification requests if the provider advises the insurer it objects to the verification being requested and advises the carrier of the basis of its objection.
The applicant for no-fault benefits should not be treated as an adversary. (11 NYCRR 65-3.2 [b].)
*574 Mallela material is inherently adversarial. Mallela is the outgrowth of litigation; a declaratory judgment action contesting numerous medical providers’ right to obtain payment of no-fault benefits on the grounds they were improperly incorporated because persons other than those holding the license to practice medicine were the de facto owners of the professional corporation. Mallela information does not assist an insurer in determining whether it should pay the claim. Mallela information is requested to determine if the provider is ineligible to receive payment of no-fault benefits not simply for the claim in question but for all claims.
Insurers should raise Mallela issues and request Mallela information only for good cause where the insurer “can demonstrate behavior tantamount to fraud.” (State Farm Mut. Auto. Ins. Co. v Mallela at 322.) Therefore, before a claimant provider should be required to produce Mallela material, the insurer must have and articulate a good faith and factual basis for seeking the information.
Verification is permitted to investigate the claim (11 NYCRR 65-3.5 [c]). Mallela material does not involve the investigation of the claim; it involves an investigation of the claimant. The ultimate determination of a successful Mallela action or defense will not determine one specific claim. A successful Mallela action or defense will result in the determination the claimant provider is ineligible to obtain payment of no-fault benefits from any carrier for any claim. (State Farm Mut. Auto. Ins. Co. v Mallela, supra; Matter of Andrew Carothers, M.D., P.C. v Insurance Cos. Represented by Bruno Gerbino & Soriano, LLP, 26 Misc 3d 448 [Civ Ct, Richmond County 2009].)
Nationwide’s reasons for requesting copies of Victory’s leases and management agreements by way of verification do not hold up when scrutinized.
Victory provided Nationwide with a copy of form SS-4 issued by the Internal Revenue Service which contains the employer identification number issued to Victory by the IRS on January 5, 2011. The only reason to verify the information contained on this document on IRS letterhead would be if Nationwide believed this document was a forgery or a fake.
Nationwide does not indicate where ISO obtains the taxpayer identification numbers contained in its database. Nationwide also does not indicate how up-to-date the ISO database is. Victory was incorporated and its taxpayer identification number was issued only three months before the claim in question was *575 submitted. It is entirely possible if not likely that a taxpayer identification number issued to a newly formed professional service corporation would not be in the ISO records.
Nationwide claims the treating physician was Joseph Raia, M.D. Nationwide claims Dr. Raia owns and treats under numerous other entities including Socrates Medical Health, M.D. The record before the court does not contain any entries made by Dr. Raia. The claim form submitted and all the other documents appear to be signed by Dr. Elsoury.
Nationwide offers no proof of Dr. Elsoury’s association with any other medical providers. A doctor may be the principal in more than one medical professional service corporation.
The address at which the services were provided, 82-11 37th Avenue, Jackson Heights, New York is a multistory office building. There is nothing unusual about several medical practices having offices in a multistory office building.
Nationwide did not provide the court with the names of any of the other medical providers that maintain offices at 82-11 37th Avenue, Jackson Heights, New York. Nationwide did not establish that any of these other providers have ever submitted a no-fault claim to Nationwide or any other insurer or if these other providers did submit claims, the claims reflected the medical services were provided in the same office, Room 402, at which Victory provided the services to Rojas.
Nationwide’s claim that Victory has the same billing address as numerous other medical facilities and nonmedical facilities is not supported by the record. Nationwide does not provide the court with evidence that it received no-fault claims from any other medical providers that used 614 Richmond Road, 2nd Floor, Staten Island, New York 10304 as a billing address. Nationwide did not provide the court with any evidence any other medical provider used or uses this address for any purpose.
The records of the Secretary of State indicate there are eight different “Wilk Realty” or “Wilk Real Estate” entities. None of them use 614 Richmond Road, 2nd Floor, Staten Island, New York 10304 as their address for service of process. Additionally, the Secretary of State’s records indicate Wilk Real Estate Ltd. was dissolved on December 1, 2008, more than two years before Victory was incorporated.
Great Liberty Funding, Inc. was dissolved on July 28, 2009. The records of the Secretary of State indicate Great Liberty *576 Funding did not use 614 Richmond Road, 2nd Floor, Staten Island, New York 10304 as its address for service of process. The only currently active corporation using Great Liberty in its name is an active domestic corporation whose principal place of business is in Dutchess County and whose address for service of process is in Wingdale, New York.
Nationwide did not provide evidence establishing Wilk Realty and/or Great Liberty Funding ever used the address 614 Richmond Road, 2nd Floor, Staten Island, New York 10304 for any purpose. Nationwide also fails to establish any relationship between Victory and/or Wilk Realty and Great Liberty Funding.
If the court were to grant Nationwide summary judgment in this situation, the court would be permitting an insurer to request any verification, relevant to the claim or not, and to obtain summary judgment when the provider who had objected to the verification request fails to provide the material to which it objected. A provider must have a method by which it can object to a verification request and preserve the propriety of that request for judicial determination.
If the provider objects to the request for verification, then the issue of whether the requested verification material and the objection were proper are preserved and become questions of fact for the trier of fact. If the insurer can establish it had a reasonable, good faith, factual basis for requesting the verification, then the failure of the claimant provider to furnish the material will result in the dismissal of the action. If the insurer cannot establish a reasonable, good faith, factual basis for requesting the verification, then the insurer will be required to pay the claim.
Nothing herein should be read to preclude Nationwide from asserting a Mallela defense or commencing a declaratory judgment action seeking Mallela relief and obtaining Mallela material in discovery should the insurer have a good faith basis for doing so.
A Mallela defense is nonprecludable. (Lexington Acupuncture, P.C. v General Assur. Co., 35 Misc 3d 42 [App Term, 2d, 11th & 13th Jud Dists 2012].) An insurer who does not request Mallela material by way of verification is not precluded from raising it as a defense in the action or obtaining appropriate discovery should the insurer demonstrate a good faith basis for believing the medical provider is improperly incorporated or if nonprofessionals are the de facto owners of the professional corporation. (Midborough Acupuncture, P.C. v State Farm Ins. Co., 21 Misc *577 3d 10 [App Term, 2d & 11th Jud Dists 2008].) This procedure will make Mallela discovery part of the litigation and will give a claimant provider the ability to object to the production of Mallela material by moving for a protective order (CPLR 3103 [a]), by timely objecting to a demand for Mallela material (CPLR 3122 [a]) or by establishing the material requested is palpably improper. (Five Boro Psychological Servs., P.C. v AutoOne Ins. Co., 27 Misc 3d 89 [App Term, 2d, 11th & 13th Jud Dists 2010].) This procedure will also give the court the opportunity to direct an in camera review of the material to determine if there is a basis for requiring a provider to produce material relating to its corporate structure and operation, material that would otherwise be irrelevant to an action seeking to obtain payment of no-fault benefits.
Plaintiffs cross motion for summary judgment is denied. As part of its prima facie proof, plaintiff is required to establish the documents it submitted in connection with its claim for no-fault benefits are business records. (Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co., 55 AD3d 644 [2d Dept 2008]; Bath Med. Supply, Inc. v Utica Mut. Ins. Co., 23 Misc 3d 141 [A], 2009 NY Slip Op 51030[U] [App Term, 2d, 11th & 13th Jud Dists 2009]; Bajaj v General Assur., 18 Misc 3d 25 [App Term, 2d & 11th Jud Dists 2007].) Plaintiff did not establish the documents submitted in connection with this claim are business records. (CPLR 4518 [a].)
For the foregoing reasons, defendant’s motion and plaintiffs cross motion are denied.

. The bill submitted in connection with this claim states Victory’s billing address as 614 Richmond Road, 2nd Floor, Staten Island, New York 10304. The claim reflects the services for which Victory was seeking payment were provided at the facilities of 32nd Avenue Medical EC., 82-11 37th Avenue, 4th Floor (Room 402), Jackson Heights, New York 11372.

. The proper citation to the action is State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]).

. Crescent Radiology raises other issues regarding objections to an EUO. In Crescent Radiology, the medical provider’s claims were denied and its action to recover no-fault benefits was dismissed because the assignor failed to appear for an EUO. The assignee would not have been able to object to the requested EUO of the assignor because the insurer would not have provided the assignee with notice that the insurer was requesting an EUO of the assignor.