**ALLSTATE INSURANCE COMPANY, Allstate Indemnity Company, and Allstate Property & Casualty Insurance Company, Plaintiffs,**

v.

**Hisham ELZANATY, Hisham Ahmed Elsherbiny, Alan Goldenberg, Can Medical, P.C., and Uptown Health Care Management, Inc., d/b/a East Tremont Medical Center, New York Neuro & Rehab Center, and Jerome Family Health Center, Defendants.**

No. 11–cv–3862 (ADS)(ARL).

United States District Court, E.D. New York.

Jan. 7, 2013.

The Law Offices of Robert P. Macchia & Associates, by Robert Phillip Macchia, Esq., Mehmet F. Gokce, Esq., of Counsel, Mineola, NY, Smith & Brink, P.C., by Michael W. Whitcher, Esq., Nathan A. Tilden, Esq., Richard D. King, Esq., of Counsel, Garden City, NY, for the Plaintiffs.

Blodnick, Conroy, Fazio & Diglio, P.C., by Edward K. Blodnick, Esq., Steven R. Talan, Esq., Thomas R. Fazio, Esq., of Counsel, Garden City, NY, for the Defendants Hisham Elzanaty, Hosam Ahmend El–Sherbiny, Alan Goldenberg, and Uptown Health Care Management, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently pending before the Court is: (1) a second motion filed by Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Insurance Company ("Allstate" or "the Plaintiffs") to dismiss and stay the Defendants' counterclaims (DE 96–97); (2) a motion to dismiss and/or abstain filed by Hisham Elzanaty, Hisham Ahmed Elsherbiny, Alan Goldenberg, CAN Medical, P.C., and Uptown Health Care Management, Inc., d/b/a East Tremont Medical Center, New York Neuro & Rehab Center, and Jerome Family Health Center ("the Defendants") (DE 162–65); (3) a motion to amend filed by Allstate (DE 190–91); and (4) a motion to compel arbitration filed by the Defendants (DE 223–24). The parties have created a complicated patchwork of litigation in every avenue possible, including arbitration, state, and federal proceedings. Through this complex web of motion practice, the parties seek this Court's assistance in sorting out the confusion they have initiated. Due to the recent filing of a motion to compel arbitration by the Defendants on January 2, 2013, the Court necessarily must reserve decision on Allstate's motion to dismiss and stay and the Defendants' motion to compel arbitration until the latter motion is fully briefed. However, this Order will address the other two pending motions.

## I. BACKGROUND

On August 11, 2011, the Plaintiffs filed the instant case against the Defendants, seeking damages under the federal RICO statute in connection with the Defendants' creation and perpetration of an insurance fraud scheme. The Plaintiffs also seek declaratory relief and damages under state law, including claims for: (1) common law fraud; (2) unjust enrichment; and (3) unfair and deceptive business practices in violation of N.Y. Gen. Bus. Law § 349. In short, Allstate alleges that the Defendant Hisham Elzanaty, while working in concert with coconspirator licensed medical professional Jadwiga Pawlowski M.D.; their fraudulently incorporated medical professional services corporations—JP Medical, P.C., Accurate Medical, P.C., Nolia Medical, P.C., and Quality Medical Healthcare Provider P.C. (the "Pawlowski Defendants"); and co-conspirator management company, Uptown, d/b/a East Tremont Medical Center, New York Neuro & Rehab Center, and Jerome Family Health Center ("Uptown"); defrauded the Plaintiffs of millions of dollars over the course of many years. The Complaint states that the Defendants accomplished their fraudulent scheme by creating fictitious medical facilities that held themselves out to Allstate as legitimately incorporated medical entities under New York State law, so that they could obtain payments from Allstate under New York's No–Fault insurance scheme.

Before the Court delves into the specific allegations concerning this matter, it will be useful to review New York State's no-fault insurance scheme that forms the basis of the litigation.

### A. *Governing Law*

Before 1973, New York State had only common law tort remedies for most injuries associated with automobile accidents.

However, in 1973, the New York State Legislature passed the precursor to today's Comprehensive Motor Vehicle Insurance Reparations Act (the "Act"), see N.Y. Ins. Law §§ 5101 et seq. (formerly N.Y. Ins. Law §§ 670 et seq.), which instituted a no-fault insurance scheme. *See Medical Soc'y v. Serio,* 100 N.Y.2d 854, 860, 768 N.Y.S.2d 423, 800 N.E.2d 728 (2003). "The purpose of the Act was to create a simple, efficient system that would provide prompt compensation to accident victims without regard to fault, and in that way reduce costs for both courts and insureds." *State Farm Mut. Auto. Ins. Co. v. Mallela,* 372 F.3d 500, 503 (2d Cir.2004) (citing *Serio,* 100 N.Y.2d at 860, 768 N.Y.S.2d 423, 800 N.E.2d 728). The Act permits injured parties to recover benefits from insurers for "basic economic loss"—including medical expenses—that arise out of the use or operation of a covered motor vehicle. *See* N.Y. Ins. Law § 5102.

The Superintendent of Insurance is charged with promulgating regulations to implement the Act. "The regulations permit covered parties to assign their benefits to health care providers, who in turn submit claims to insurers for treatment and services given to the injured individual." *Mallela,* 372 F.3d at 503 (citing 11 N.Y.C.R.R. § 65–3.11). In order to ensure prompt and efficient compensation, the regulations establish strict and brief time periods for processing a claim. Insurers must request any necessary "verification" of claims within ten days of receiving a completed claim. *See* 11 N.Y.C.R.R. § 65.15(d). Upon getting verification, insurers have thirty days within which to pay or deny a benefits claim. *See* 11 N.Y.C.R.R. § 65.15(g).

In 2001, the New York State Insurance Department added a specific regulation that states:

A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

11 N.Y.C.R.R. § 65–3.16(a)(12). Thus, in order for a provider to be eligible for reimbursement, a provider must meet all relevant New York State or local licensing requirements. This regulation forms the core of the instant dispute.

For instance, New York forbids non-physicians from employing physicians or controlling their practices. Accordingly, under New York's Business Corporation Law, all professional service corporations ("P.C.s") that are licensed to practice medicine must be owned and controlled only by licensed physicians. N.Y. Bus. Corp. Law §§ 1507, 1508. In order to obtain the necessary licensing, under the N.Y. Business Corporation Law § 1503, a certificate of incorporation must list the names of all shareholders, directors, and officers, and include documentation certifying that such individuals are licensed to practice medicine. The Attorney General is given the power to bring an action to dissolve a P.C. if the corporation "procured its formation through fraudulent misrepresentation or concealment of a material fact." N.Y. Bus. Corp. Law § 1101(a)(1). New York also assigns criminal penalties to those who fraudulently obtain a license, N.Y. Educ. Law § 6512, or knowingly submit false documents to a public office, N.Y. Penal Law § 175.10. If a P.C. is not actually owned and controlled by a licensed physician and thus fraudulently incorporated, it may not submit assigned claims for no-fault insurance benefits. *See State Farm v. Mallela,* 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005).

Also relevant to the present case are what are known as "Article 28 facilities". The New York State Department of Health ("DOH") licenses and regulates Article 28 facilities. "The DOH oversees the establishment and construction of hospitals in New York State pursuant to Article 28 of the Public Health Law and issues operating certificates specifying the kinds of services the facilities are authorized to provide." *New York ex rel. Spitzer v. Saint Francis Hosp.,* 94 F.Supp.2d 399, 403 (S.D.N.Y.2000). "Under both Federal law ... and State law (Public Health Law §§ 2801–a, 2802), a party wishing to establish or expand a health clinic or hospital must first submit an application to a [certificate of need ("CON")] program to determine the public need for such proposal, the applicant's competence and the financial feasibility of the proposed service." *Arnot–Ogden Mem. Hosp. v. Guthrie Clinic, Inc.,* 122 A.D.2d 413, 505 N.Y.S.2d 232 (1986); *see Spitzer,* 94 F.Supp.2d at 403 ("The CON process must also be followed in seeking DOH approval for the establishment of a new hospital corporation via the DOH's Public Health Council." (citing N.Y. Pub. Health Law § 2801–a(1))). This procedure is required only of clinics and hospitals, and not of private physicians. *See Clifton Springs Sanitarium Co. v. Axelrod,* 115 A.D.2d 949, 950, 497 N.Y.S.2d 525 (1985). The CON process has been described as follows:

To obtain approval from the Public Health Council, a facility must go through a three-step process. First, the facility submits an application for approval of its proposed certificate of incorporation to the Public Health Council. N.Y. Pub. Health Law § 2801–a(2). The Council then forwards the certificate and other supporting documents to the state hospital review and planning

council and the health systems agency that has geographical jurisdiction of the area where the proposed hospital is to be located, in this case, the Hudson Valley Health Systems Agency, Inc. *See id.* The state hospital review and planning council and the health systems agency then offer their recommendations to the Public Health Council.

*Spitzer,* 94 F.Supp.2d at 403.

### B. *Factual Background*

As the Plaintiffs have already settled with the Pawlowski Defendants—Jadwiga Pawlowski M.D. and the alleged fraudulently incorporated medical professional services corporations—JP Medical, P.C., Accurate Medical, P.C., Nolia Medical, P.C., and Quality Medical Healthcare Provider P.C.—the Court will focus on the facts concerning the remaining Defendants, namely Elzanaty, Uptown, and the medical facilities that fall under its umbrella.

Uptown is a medical center incorporated pursuant to Article 28 of the New York Public Health Law and does business as East Tremont Medical Center, New York Neuro & Rehab Center, and Jerome Family Health Center (collectively "Uptown" or "the Uptown facilities"). Elzanaty, the owner of Uptown, is not and never has been licensed to practice medicine. Uptown rendered medical treatment to individuals covered by No–Fault Insurance who, in turn, assigned their respective claims for the covered medical expenses to Uptown so that Uptown could seek reimbursement directly from the appropriate No-fault insurance carrier—here, Allstate.

The Complaint details a wide-sweeping scope of alleged fraudulent activities by Elzanaty and Uptown as Article 28 entities. For example, Allstate contends that the Defendants knowingly misrepresented and concealed facts in an effort to prevent Allstate from discovering that the Article 28 entities lacked a legitimate medical director, as Pawlowski played the role of a sham medical director while defendant Hisham Ahmed El–Sherbiny ("Ahmed"), a physician not licensed to practice medicine in New York, was in reality the medical director. As another example, the Plaintiffs assert that the Defendants knowingly entered into complex financial agreements with various medical clinics in order to conceal the fact that virtually all of Uptown's no-fault billing had been procured through unlawful kickbacks. In sum, the Plaintiffs allege that (1) the Uptown facilities are not properly licensed because its medical director was not licensed to practice medicine in New York State; (2) the Uptown facilities were not properly licensed because one specific facility "violated its site-specific Operating Certificate by sending its employees to facilities throughout New York to examine and/or treat patients" (Complt., at ¶ 4vi); and (3) the Uptown facilities are not properly licensed because they are Article 28 facilities that paid "unlawful kickbacks" for some patient referrals.

### C. *Procedural History*

#### 1. State Court Action

In July 2011, one month prior to the commencement of this action, a state court action was commenced in Bronx Supreme Court. Elzanaty and Uptown filed the action in order to obtain a declaratory judgment that (1) Uptown is a licensed and credited Article 28 medical facility and operated in compliance with all of the regulations set forth by the New York State DOH; (2) Allstate may not demand verification procedures regarding Uptown's incorporation; and (3) Allstate may, upon a good faith basis, verify claims to determine if they are medically necessary; but (4) Uptown is entitled to submit No–Fault

claims and receive reimbursement for services rendered to Allstate's injured insureds.

On October 5, 2012, the Honorable Norma Ruiz issued a decision/order which made several rulings. First, the Plaintiffs' motion for summary judgment was denied as premature. More importantly, Allstate's motion to dismiss pursuant to N.Y. CPLR § 3211(a) on the ground that the same cause of action is pending between the parties before this Court was granted. In particular, the New York State court wrote the following:

> The action pending before this Court is one of a declaratory nature which will, by its very nature, only declare the rights of parties on the limited issue before this Court. The federal action, on the other hand, will resolve all issues in this declaratory action, as well as, all the issues between the parties.

(Def's. Reply, Ex. 3.) Accordingly, Justice Ruiz granted Allstate's motion to dismiss the action pursuant to CPLR § 3211(a)(4).

### 2. The Plaintiffs' First Motion to Dismiss

This case was commenced on August 11, 2011. On September 26, 2011, Allstate filed its initial partial motion to dismiss thirty-five portions of the Defendants' counterclaim, meaning thirty-five "claims" where the Defendants were seeking reimbursement from Allstate as to certain medical services that were provided to insureds. (DE 72–73.) All thirty-five of these claims had been either (1) already litigated, adjudicated, or settled in another forum; or (2) pending in another forum. However, the Defendants voluntarily withdrew each of the thirty-five matters raised in the Plaintiffs' partial motion to dismiss. (DE 83.) At that point, the first motion to dismiss was mooted. Thus, this motion is no longer pending.

### 3. The Plaintiffs' Second Motion to Dismiss

On March 17, 2012, Allstate filed a second motion to dismiss. In this particular motion, the Plaintiffs seek to dismiss portions of the Defendants' counterclaim which, at the time of the filing of the Plaintiff's First Motion to Dismiss, were not pending in any forum, but have since been filed with the American Arbitration Association ("AAA"). In addition, the second motion to dismiss seeks to stay all future arbitration filings. As set forth above, the Court reserves decision on this motion in light of the recent filing by the Defendants to compel the precise arbitrations which Allstate's motion seeks to stay.

### 4. The Defendants' Motion to Dismiss

On August 21, 2012, the Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(c) and a motion to abstain pursuant to Fed.R.Civ.P. 12(b)(1). The Defendants raise a number of issues in this motion, including: (1) that abstention is warranted under the *Colorado River* doctrine and/or under the *Burford* abstention doctrine; (2) that the Plaintiffs' Complaint fails to plead the existence of an actionable claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), or for fraudulent conduct because the state administrative agency has determined proper Article 28 licensure; (3) that this action must be brought pursuant to Article 78 of the New York Civil Practice Laws and Rules; (4) that the Plaintiffs' claims are barred, in whole or substantial part, by the doctrines of collateral estoppel, *res judicata*, and the *Rooker–Feldman* doctrine; and (5) that the Plaintiffs' claims pre-dating August 11,

2007 are barred by the applicable four year statute of limitations governing RICO cases. The Court will address the merits of this motion below.

### 5. The Plaintiffs' Motion to Amend

On October 5, 2012, the Plaintiffs filed a motion to amend the Complaint. Specifically, they seek an order granting them leave to amend their complaint to join additional parties pursuant to Fed.R.Civ.P. 15 and 21. During the discovery process, the Plaintiffs partially conducted the deposition of prior defendant Pawlowski. According to the Plaintiffs, during this deposition, their suspicions were confirmed that Elzanaty utilized another management company to launder money—Allstar Health Care Management, Inc. ("Allstar"). As such, the Plaintiffs seek to add Allstar as a Defendant, which is unopposed by the Defendants.

### 6. The Defendant's Motion to Compel Arbitration

Finally, on January 2, 2013, the Defendants filed a motion to compel arbitration. In particular, the Defendants have moved to compel arbitration of its counterclaims against the Plaintiffs pursuant to the arbitration clause in the underlying insurance contracts; the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.; New York Insurance Law § 5106(b); and New York Insurance Regulation 11 N.Y.C.R.R. § 65–1.1. According to the Defendants, they have an absolute right to elect to arbitrate their pending counterclaims, which are claims that have been submitted to Allstate but have not yet been paid, as well as any future claims for payment. Thus, while Allstate seeks to stay the arbitrations and in essence compel the litigation of the counterclaims, the Defendants seek to stay the counterclaims and compel arbitration. As set forth above, the Court reserves decision on this motion until it is fully briefed.

### 7. Partial Settlement

On November 30, 2012, the parties submitted a stipulation of discontinuance which stated that a settlement and release agreement was executed by the Plaintiffs and the Pawlowski Defendants—Jadwiga Pawlowski, M.D., J.P. Medical, P.C., Accurate Medical, P.C., Nolia Medical, P.C., and Quality Medical Healthcare Provider, P.C. Accordingly, the only Defendants that remain in the case are Hisham Elzanaty, Hisham Ahmed El–Sherbiny, Alan Goldenberg, CAN Medical, P.C., and Uptown Health Care Management, Inc. d/b/a East Tremont Medical Center, New York Neuro & Rehab Center and Jerome Family Health Center (collectively "Uptown" or the "Defendants"). Thus, when this opinion refers to "Uptown" or the "Defendants", it is only referring to these remaining Defendants.

## II. THE DEFENDANTS' MOTION TO DISMISS

On August 21, 2012, the Defendants filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(c) and 12(b)(1). The Defendants raise a plethora of arguments in this motion. First, under the rubric of Rule 12(b)(1), they assert that the Court should abstain from this litigation because of the *Colorado River* doctrine and/or the *Burford* doctrine. Second, under the rubric of Rule 12(b)(c), they assert that the Plaintiffs' complaint should be dismissed, in whole or substantial part, for failure to set out causes of action for which relief may be granted. In this latter regard, the Defendants maintain that the Plaintiffs have failed to plead the existence of an actionable claim under the RICO framework; that this action may only be pursued through a New York State Article 78

proceeding; that the Plaintiffs' claims are barred by the doctrines of collateral estoppel, *res judicata*, and the *Rooker–Feldman* doctrine; and that the Plaintiffs' claims predating August 11, 2007 are barred by the applicable four-year statute of limitations governing RICO actions. The Court will first address the Defendants' contentions relating to abstention and will then turn to their arguments under the Rule 12(c) framework.

## A. *As to the Rule 12(b)(1) Motion to Dismiss on Abstention Grounds*

As stated above, on July 15, 2011, the Defendants commenced an action in New York Supreme Court, Bronx County, titled *Uptown, et. al., v. Allstate Insurance Co., et. al.*, Index No. 306322–2011. The Defendants now assert in this case that comity and conservation of judicial resources warrant abstention with regard to the instant action pursuant to Rule 12(b)(1). In particular, the Defendants assert that *Colorado River* abstention is appropriate in light of the Bronx Supreme Court Action, a preceding parallel matter in which the dispositive issue, a matter of first impression arising under New York State law, is pending. Alternatively, the Defendants assert that *Burford* abstention is warranted because a determination of the Plaintiffs' claims would effectively reverse the administrative findings of the New York State DOH, which would arguably subvert the agency's jurisdiction and undermine comprehensive state regulation of a matter of state concern.

### 1. Legal Standard on a Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to [Federal Rule of Civil Procedure] 12(b)(1)." *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 341–42 (E.D.N.Y.2008).

The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* at 113. In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. *Makarova*, 201 F.3d at 113.

### 2. *Colorado River* Abstention

*Colorado River* abstention stems from the Supreme Court's 1976 decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "The abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's duty to exercise its jurisdiction." *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir.2001) (quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. However, "[u]nder the *Colorado River* exception the court may abstain in order to conserve federal judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Id.* at 813, 96 S.Ct. 1236. Thus, unlike other doctrines of abstention

which are premised on the careful balance between federal and state power, *Colorado River* mainly concerns the conservation of judicial resources.

■ Before engaging in the analysis of whether to abstain under *Colorado River*, a court must determine if the concurrent state and federal proceedings are parallel. *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998). Cases are considered "parallel" when "the main issue in the case is the subject of already pending litigation." *GBA Contr. Corp. v. Fidelity & Deposit Co.*, No. 08 Civ. 5171, 2001 WL 11060, at *14 (S.D.N.Y. Jan. 4, 2001).

■ Only if the federal and state cases are parallel, do courts consider a six-factor test to determine if abstention is appropriate under *Colorado River*, namely: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). " 'No one factor is necessarily determinative,' " and " 'a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.' " *Moses H. Cone*, 460 U.S. at 15–16, 103 S.Ct. 927 (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236). However, the Supreme Court has cautioned that " '[o]nly the clearest of justifications will warrant dismissal.' " *Id.* at 16, 103 S.Ct. 927 (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236). Thus, "[a]lthough the decision whether to abstain on *Colorado River* grounds is committed to the district court's discretion," *Woodford*, 239 F.3d at 523, the Court's analysis is "heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16, 103 S.Ct. 927.

In short, the Defendants posit that *Colorado River* abstention is warranted in the instant action. The Defendants base their position on the assertion that the federal and state actions are parallel, and that the factors weigh in favor of abstention, namely that the issues presented are grounded in New York State rather than federal law and underlying the gravamen of the complaint is a novel issue of New York State law.

■ The Court must first make the threshold determination as to whether the federal and state court cases are "parallel." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). " 'Federal and state proceedings are "concurrent" or "parallel" for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.' " *Abercrombie v. College*, 438 F.Supp.2d 243, 258 (S.D.N.Y.2006) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)). "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *In re Comverse Tech., Inc.*, No. 06 Civ. 1849, 2006 WL 3193709, at *2, 2006

U.S. Dist. LEXIS 80195, at *6 (E.D.N.Y. Nov. 2, 2006) (emphasis in original) (citing *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir.2004)) (internal citation omitted). "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *In re Comverse Tech., Inc.,* 2006 WL 3193709, at *2, 2006 U.S. Dist. LEXIS 80195, at *6 (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510, 520 (7th Cir.2001)). If a court finds that the federal and state cases are not parallel, "*Colorado River* abstention does not apply, whether or not issues of state law must be decided by the federal court." *In re Comverse Tech., Inc.,* 2006 WL 3193709, at *4, 2006 U.S. Dist. LEXIS 80195, at *12.

 As set forth in the background section above, there are two fundamental issues in this case: (1) whether Allstate may inquire into Uptown's compliance with Article 28 of the N.Y. State Public Health law; and (2) whether Uptown is entitled to receive No–Fault Payments from Allstate if it is not in compliance with Article 28.

According to the Defendants, there can be no question that the Bronx Supreme Court litigation is parallel for the purpose of *Colorado River* analysis. As of the time of the filing of the Defendants' instant motion to dismiss in this case, there was a motion for summary judgment pending in the state court action as to whether the DOH is the sole arbiter of whether an Article 28 medical center is in compliance with its licensing and operational requirements. According to the Defendants, this determination, which is an issue of first impression under New York law, will substantially impact the present federal action.

On the other hand, the Plaintiffs assert that this matter is not parallel with the pending state court litigation. According to Allstate, the state court action alleges that Allstate improperly investigated Uptown's corporate structure to avoid tendering payment for medical treatment rendered to its insureds. Accordingly, Uptown seeks a declaration in the state action that: (1) the determination by the N.Y. Board of Health that Uptown is a properly licensed Article 28 facility forms a sufficient basis for Uptown to collect No–Fault insurance proceeds; (2) Allstate cannot seek examinations under oath or request verification documents that question whether Uptown is a validly incorporated Article 28 facility; and (3) Uptown is entitled to submit No–Fault claims and receive reimbursement for services rendered to Allstate's injured insureds. Allstate now claims that there is a major difference between the state action and this federal one. Mainly, the Plaintiffs point to the claims that the "Pawlowski P.C. s" were fraudulently incorporated and ineligible to receive No–Fault reimbursement, and thus this matter involves additional parties not involved in the Supreme Court Action.

While the question posed to the Court potentially leads to a complicated analysis, the entire issue can actually be resolved simply. Although none of the parties have chosen to notify the Court of such, it plainly appears based upon the Court's own review of the state court docket that the Bronx Supreme Court action was disposed of and closed by an Order dated October 5, 2012. Indeed, this Order was provided by the Defendants as an exhibit. (DE 209, Ex. 2). In the state court, Allstate moved to dismiss the action pursuant to CPLR § 3211(a)(4) on the ground that the same cause of action was currently pending between the parties in the United States District Court for the Eastern District of New York or in the alternative to stay the action pursuant to CPLR § 2201 pending a determination of this case. The Honorable

Norma Ruiz, Justice of the Supreme Court of the State of New York, Bronx County, recognized that this federal action was commenced one month after Uptown commenced the state declaratory judgment action. Yet, Justice Ruiz highlighted the fact that while the state action was of a declaratory nature and would only declare the rights of the two parties before the state court—namely Uptown and Allstate—the present action would resolve all issues in the declaratory action as well as all the issues between the parties. Accordingly, the Court granted Allstate's motion to dismiss the action.

In light of this dismissal and the fact that there is no state court parallel proceeding, *Colorado* abstention is inapplicable and the Court need not proceed to assess the relevant six-factor test. Therefore, the Defendants' motion to dismiss pursuant to Rule 12(b)(1) on the ground of *Colorado–River* abstention is denied. *See Fisher v. O'Brien,* No. 09 Civ. 42, 2010 WL 1269793, at *4 (E.D.N.Y. March 9, 2010) ("Defendants' argument that the Court should decline to exercise jurisdiction pursuant to *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), is now moot as there is no parallel state court proceeding pending."); *Doyle v. N.Y. State Div. of Housing and Community Renewal,* No. 98 Civ. 2161, 1999 WL 177441, at *5 (S.D.N.Y. March 30, 1999) ("In this case, there is no parallel state proceeding and jurisdiction is not being exercised simultaneously. Therefore, the Court has no basis upon which it can refuse to exercise federal jurisdiction in this case.").

### 3. *Burford* Abstention

■ The Defendants have also moved this Court to abstain pursuant to a principle enunciated by the Supreme Court known as "*Burford* abstention." This doctrine instructs a federal court to abstain, as follows:

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citations and quotations omitted); *see also Tribune Co. v. Abiola,* 66 F.3d 12 (2d Cir.1995).

■ The *Burford* abstention doctrine is applied in order to avoid needless conflict with administration by a state of its own affairs. *See Weiser v. Koch,* 632 F.Supp. 1369, 1384 (S.D.N.Y.1986). Therefore, if the purpose of *Colorado River* abstention is to ease the congestion of the federal court docket when a similar action is pending in state court, the goal of *Burford* abstention is to avoid needless disruption of state efforts to establish a coherent policy in an area of comprehensive state regulation.

■ "[I]t has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity....'" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). However, as with *Colorado River* abstention, the Second Circuit has cautioned that abstention is the exception and should only be applied

in very limited circumstances. *See Hachamovitch v. DeBuono,* 159 F.3d 687, 697 (2d Cir.1998); *United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 593 (2d Cir.1989).

▉ There are "three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 650 (2d Cir.2009). Those factors are as follows: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch v. DeBuono,* 159 F.3d 687, 697 (2d Cir. 1998).

▉ A court has three options when it decides to refrain from the action under the *Burford* abstention doctrine. The court may dismiss the action, remand the action to state court if it was commenced there, or stay the action. *See id.* at 721, 116 S.Ct. 1712, 135 L.Ed.2d 1. The Supreme Court has held that "an order merely staying the action 'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition.' " *Id.* (quoting *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 29, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)).

The Defendants assert that any direct claims by the Plaintiffs for damages or other relief are secondary to and subsumed by their claims for declaratory judgment that Uptown is "improperly licensed" as an Article 28 facility and therefore ineligible for reimbursement under 11 NYCRR § 65–3.16(a)(12). In other words, the Defendants argue that without a finding that Uptown is "improperly licensed", the Plaintiffs have no direct claim under RICO or any other theory. The Defendants argue that the determination of the Plaintiffs' claims with regard to the threshold issue of proper licensing would effectively reverse the findings of the New York State DOH and subvert that agency's jurisdiction and undermine comprehensive state regulation of a matter of state concern. The Defendants contend that New York has established comprehensive regulations regarding both the reimbursement of medical providers under the No–Fault Law and a comprehensive legislative and administrative system to manage the licensing, review, regulation and oversight of hospitals under Article 28 of the Public Health Law. Thus, the Defendants assert that to the extent that the Plaintiffs claim potential inconsistencies between the regulations of the Insurance Commissioner and the licensing and operational determinations of the Health Commissioner, such claims are strictly matters of state concern and state law.

In response, the Plaintiffs claim that abstention is not warranted under the *Burford* doctrine because Allstate is not challenging any regulatory determinations or administrative action. The crucial distinction, according to the Plaintiffs, is that they are not challenging the DOH's decision to issue licenses to Uptown or to permit it to operate, much less the entire Article 28 regulatory scheme. Instead, they are challenging Uptown's fraudulent conduct and its ability to receive no-fault reimbursement from Allstate.

▉ The Court agrees with the Plaintiffs that *Burford* abstention is not appropriate in the instant case. This case does not challenge the Article 28 regulatory framework or challenge the State's authority with regard to licensing determina-

tions. Rather, this case largely concerns whether the holding of *State Farm v. Mallela*, 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005)—that insurers can bring suit against health care providers alleging that they are not eligible for no fault law reimbursement for unlawful incorporation of a medical corporation—may be extended from the business corporation law context to the public health law context through the vehicle of a federal civil RICO action. This decision and its import to the present case will be explored at length further below. But for now, it is only necessary to note that in the Court's view, answering this question would not disrupt the state's purpose in establishing a coherent public policy on a matter involving substantial concern to the public. While it may present a novel issue involving state law, that alone is not a basis for abstention. *See Meredith v. City of Winter Haven*, 320 U.S. 228, 234–235, 64 S.Ct. 7, 88 L.Ed. 9 (1943) ("[D]enial of [a party's] opportunity [to assert their rights in federal court] merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act."). A district court may instead "try to predict how a state court would rule." *Salve Regina College v. Russell*, 499 U.S. 225, 241, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). "Moreover, there exists a precise mechanism for determining in the federal litigation how the high court of the State of New York would decide a novel issue of state law; the circuit court may certify the issue to the State Court of Appeals." *Schepp*, 616 F.Supp.2d at 346 (citing N.Y. Const., Art. VI, § 3(b)(9) (requiring the State Court of Appeals to allow court of appeals of the United States to certify novel issues of state law); *see also Lehman Bros. v. Schein*, 416 U.S. 386, 390–391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)

(while certification "where there is doubt as to local law" is not obligatory, "[i]t does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism"); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("Certification procedure, in contrast [to abstention], allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.")).

In *State Farm Mut. Auto. Ins. v. Schepp*, 616 F.Supp.2d 340 (E.D.N.Y.2008), the defendants also urged the court to embrace the principles of the *Burford* doctrine, arguing that the case presented a novel issue of state law, namely the application of *State Farm v. Mallela, supra*, similar to the instant case. There, United States District Judge Frederic Block found that:

> *Burford* abstention, however, does not apply in this case because the doctrine prevents federal courts from "interfer[ing] with the proceedings or orders of state administrative agencies" in certain circumstances, *New Orleans Public Service*, 491 U.S. at 361, 109 S.Ct. 2506 (emphasis added), and the present action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency.

The court there rejected the argument that State Farm sought to disrupt New York's efforts to regulate professional corporations and the "no-fault" insurance system. *See New Orleans Public Service*, 491 U.S. at 361, 109 S.Ct. 2506. at 362, 109 S.Ct. 2506 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention when-

ever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."). The Court is also of the belief that the licensing process which underlies this case does not necessarily invoke *Burford* abstention principles.

Moreover, in another comparable case, *State Farm Mut. Auto. Ins. Co. v. Mallela,* 175 F.Supp.2d 401 (E.D.N.Y.2001). United States District Judge Charles P. Sifton found that "[t]he mere fact that this action involves questions of state law insurance coverage does not, however, imply that abstention is appropriate." *Id.* at 411. Further, he wrote that

> In the case at bar, plaintiff alleges fraud on the part of several private health care providers. Adjudication of plaintiff's claims will not unduly disrupt New York's regulatory scheme. If plaintiff succeeds, the PC Defendants will not be able to provide medical services and bill plaintiff for those services; if plaintiff fails, the PC Defendants will likely obtain compensation for services already rendered to plaintiff's insureds. As in *Alliance of American Insurers [v. Cuomo,* 854 F.2d 591 (2d Cir.1988)], "[t]he considerations warranting invocation of *Burford* abstention are absent in the case now before the Court," because "[t]his case [will] not involve federal courts in supervising, interrupting, or meddling in state policies by interfering in state regulatory matters." *Id.*

The Court finds that analogous reasoning applies here. *Cf. Chiropractic America v. Lavecchia,* 180 F.3d 99, 104 (3d Cir.1999) (approving abstention under *Burford* where case involved constitutional challenge to state's comprehensive no-fault automobile insurance law); *Stephens v. Cooper,* 746 F.Supp. 292 (E.D.N.Y.1990) (abstaining from hearing, on *Burford* abstention grounds, an action brought by New York doctors challenging the fee schedule promulgated for thermography services under New York's no-fault law based on administrative agency's alleged failure to comply with state administrative procedures).

■ Finally, Allstate points out that "[a]bstention principles permit district courts to dismiss suits for equitable or declaratory relief, not suits for monetary relief." *Deajess Med. Imaging, P.C. v. Allstate Ins. Co.,* 344 F.Supp.2d 907, 913 (S.D.N.Y.2004). Thus, even if the Defendants were correct that abstention was warranted, it would only apply to Allstate's claim for declaratory relief, not damages.

Therefore, the Defendants' motion to dismiss pursuant to Rule 12(b)(1) on the ground of *Burford* abstention is denied.

**B.** ***As to the Rule 12(c) Motion to Dismiss for Failure to State a Claim***

**1. Standard of Review on a Rule 12(c) Motion**

In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal,* 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)". *Hertz Corp. v. City of N.Y.,* 1 F.3d 121, 125 (2d Cir.1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### 2. As to Whether the Plaintiffs Have Adequately Plead RICO or Fraudulent Conduct

First, the Defendants assert that Allstate has failed to properly plead a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), because the predicate act asserted in this case—the licensing of Uptown as an Article 28 facility—was, in fact, lawful conduct, as it was approved by the relevant state agency. In that same vein, the Defendants claim that there can be no claim for fraudulent conduct where the state administrative agency exercises continuing jurisdiction and review over the operations of the Defendants and has determined proper licensure, compliance, and lawful operation. In particular, they argue that where an Article 28 medical facility has been found to be in compliance with its applicable licensing requirements by the N.Y. DOH, the state administrative agency charged with its oversight, they cannot be prevented from rightfully collecting what they are allegedly owed under the no-fault insurance scheme.

The substantive RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." To establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983). The Defendants assert that the Complaint here fails to allege any (a) "racketeering" activity and (b) injury to business or property, an additional pleading requirement.

In the instant litigation, the Plaintiffs allege that mail fraud is one of

the predicate criminal acts by the Defendants, which constitutes "racketeering activity" for the purposes of the RICO violation. See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996). A plaintiff asserting a mail fraud claim must show: (1) "the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." Id. It is well-settled that a complaint alleging fraud must comply with the heightened pleading standard under Rule 9(b) which requires that "the circumstances constituting fraud ... must be stated with particularity." See Fed. R.Civ.P. 9(b); see also Ganino v. Citizens Util. Co., 228 F.3d 154, 168 (2d Cir.2000).

As set forth above, Insurance Law § 5102 et seq. requires no-fault carriers to reimburse patients or assignees for "basic economic loss." In 2002, the Superintendent of Insurance passed a regulation pursuant to the Insurance Law which provides that "basic economic loss" reimbursement is not required for unlicensed or fraudulently licensed health care providers. Specifically, 11 NYCRR 65–3.16(a)(12) provides:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

■ Here, there is no question that the Plaintiffs' fraud and RICO claims rest upon the assertion that Uptown was "improperly licensed" as an Article 28 medical facility, thus rendering Uptown ineligible to collect under New York's no-fault law for the services it provided to the Plaintiffs' injured insureds. However, the Defendants assert that because the N.Y. DOH has continuously reviewed Uptown's operations and determined to continue its Certificate of Authority, Allstate is precluded from asserting that it is not in compliance. The question then is whether Allstate can claim that a medical facility did not comply with N.Y. DOH's Article 28 licensing requirements under the auspices of fraud, when the N.Y. DOH has previously confirmed its compliance. Putting aside the issue of whether Allstate is confined to resorting to an administrative remedy or an Article 78 proceeding, which the Court will address separately below, the Court finds that the Plaintiffs have adequately stated a claim for fraud and RICO on the premise of improper licensing, despite the fact that the Defendants were approved and licensed by a state authority.

This particular issue goes to the focal point of the Defendants' motion and affects the disposition of other related issues raised by the instant motion to dismiss, including whether this dispute must go to an Article 78 proceeding and whether Burford abstention is proper. In State Farm Mutual Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005), the New York Court of Appeals held that insurance carriers may withhold no-fault reimbursement payments for medical services provided by fraudulently incorporated enterprises to which insureds have assigned their claims pursuant to 11 NYCRR 65–3.16(a)(12). Essentially, the Plaintiffs here are impliedly seeking to extend Mallela from the business corporation law context to the public health context.

As mentioned above, in State Farm Mutual Automobile Insurance Co. v. Mallela, 4 N.Y.3d 313, 794 N.Y.S.2d 700, 827

N.E.2d 758 (2005), the New York Court of Appeals was faced with a question that was certified by the Court of Appeals for the Second Circuit: whether insurance carriers may withhold payment for medical services provided by enterprises fraudulently incorporated under New York business law to which plaintiffs have assigned claims. *See id.* at 319, 794 N.Y.S.2d 700, 827 N.E.2d 758; *see also State Farm Mut. Auto. Ins. Co. v. Mallela,* 372 F.3d 500 (2d Cir.2004). The healthcare providers argued that if insurers could withhold the reimbursements they were arguably entitled to under New York State insurance law, that would conflict "with the prompt payment goals" of the No–Fault laws, which require an insurer to pay a No–Fault claim from a medical provider within 30 days of a request, N.Y. Ins. Law § 5106(a) (the "Thirty–Day Rule").

 First, the New York Court of Appeals explored the New York's Superintendent of Insurance promulgation of 11 N.Y.C.R.R. § 65–3.16(a)(12), effective April 4, 2002, and interpreted this provision to exclude from reimbursable parties those providers which were unlicensed or fraudulently licensed, including medical providers owned or controlled by persons who are not licensed physicians, in violation of New York State business law. *See Mallela,* 4 N.Y.3d at 320, 794 N.Y.S.2d 700, 827 N.E.2d 758. Specifically, the Court rejected any notion that an insurer's interest in withholding payment for fraud would conflict with the State's interest in the prompt payment of claims. *Id.* at 321, 794 N.Y.S.2d 700, 827 N.E.2d 758. Of importance, the Court noted that the plaintiff "never alleged that the actual care received by patients was unnecessary or improper." Instead, the complaint "center[ed] on fraud in the corporate form." *Id.* at 320, 794 N.Y.S.2d 700, 827 N.E.2d 758. Accordingly, *Mallela* stands for the

proposition that an insurer may bring an action for fraud or unjust enrichment, based on fraudulent incorporation, to recover payments made to fraudulently incorporated providers. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C.,* No. 04 Civ. 5045, 2008 WL 4146190, at *8–*9 (E.D.N.Y. Sept. 5, 2008).

*Mallela's* focus was on fraudulent incorporation under N.Y. Business Corporation Law §§ 1507, 1508 and N.Y. Education Law § 6507(4)(c). Here, the issue with regard to Uptown is not proper incorporation under business corporation law. Instead, the issue is proper licensing under Article 28 of the N.Y. Public Health law. Article 28 and its corresponding regulations govern the formation and operation of hospitals in New York. Similar to the idea under the business law that only a licensed medical doctor can control a medical PC, a non-doctor can control a hospital but only under strict circumstances found in 10 NYCRR § 751.4, such as that there must be a medical director who "is a physician licensed by and currently registered with the New York State Education Department"; who "develops and recommends to the operator policies and procedures governing patient care in accordance with generally accepted standards of professional practice"; and "is responsible for the supervision of the quality assurance program and for reporting the activities of the program to the operator." Thus, the relevant inquiry in this case is not about who can control a medical business and how—which is governed by New York Business law and the Department of Education—but rather, who can control a medical hospital and how, which is governed by N.Y. Public Health law.

Yet, *Mallela* made no distinction between health care providers incorporated as business entities pursuant to the business corporation law, and health care pro-

viders licensed as Article 28 facilities under the public health law. While the healthcare provider at issue in *Mallela* was licensed as a medical corporation and *not* an Article 28 facility as in the instant case, this difference appears to be irrelevant. What type of licensing document is at issue, whether it is a certificate of authority issued to a professional corporation or an operating license issued to an Article 28 facility, is immaterial. The operative regulation 11 NYCRR § 65–3.16(a)(12) merely states that a provider of healthcare services is not eligible for reimbursement under Insurance Law § 5102 if the provider fails to meet *any* New York State or local licensing requirements. Article 28 was in existence as the time this regulation was promulgated in 2002, and thus if there was an intent to exclude Article 28 facilities from its scope, such an exclusion would have been included. Simply because *Mallela* concerned business licensing requirements as opposed to healthcare licensing requirements does not necessitate an alternate outcome that would prevent the present action. The Court agrees with the Plaintiffs that the Defendants wrongly seek to curtail the scope of *Mallela*.

Moreover, the result urged by the Defendants would be in direct conflict with the New York Court of Appeals advice that insurers may "look behind the face of licensing documents to identify willful and material failure to abide by state and local law." *Mallela*, 4 N.Y.3d at 321, 794 N.Y.S.2d 700, 827 N.E.2d 758. It was not intended that an Article 28 facility could hide behind the shield of its operating certificate, despite its alleged misleading of the N.Y. DOH as to its fraudulent conduct. Otherwise, insurers would have no effective mechanism to directly challenge the provider's entitlement to receive no-fault reimbursement.

Therefore, circling back to the relevant inquiry of whether the State's licensing of an Article 28 facility prevents the Plaintiffs from asserting their present claims, the Court finds that the Plaintiffs may properly assert a fraud and RICO cause of action despite the State's licensing scheme and previous approvals. Allstate's theory in this particular case is not drastically different from the number of other cases that Allstate and other insurance companies have brought after *Mallela*. 10 NYCRR § 600.5(a)(1) states that the N.Y. DOH can revoke, limit, or annul the approval of an Article 28 establishment if the operator is guilty of fraud or deceit in procuring approval, or if it has failed to comply with any condition, limitation, or other requirement imposed as part of, or in conjunction with the approval of the establishment. The Defendants are allegedly not eligible for reimbursement because they did not meet the applicable state licensing requirements, namely violating the statutes, rules, and regulations governing and controlling the establishment and/or operation of an Article 28 facility. Whether the Plaintiffs can prove these violations is for another day. What is before the Court now is only whether the Plaintiffs can premise their fraud and RICO claims on licensing that has been approved by the State. The Court now finds that such a claim may be pursued and no precedent dictates otherwise.

To support the existence of their claims, the Plaintiffs also accurately point out that because Uptown is an Article 28 medical center and thus a provider of health care services under the No–Fault law and regulations, Allstate is entitled to receive all of the information from Uptown necessary to verify its claims. 11 NYCRR § 65.3.5(c); *see, e.g., Nyack Hosp. v. Gen. Motors Acceptance Corp.*, 8 N.Y.3d 294, 299, 832 N.Y.S.2d 880, 864 N.E.2d 1279 (2007) ("Section 65–3.5(b), in turn, authorizes the

insurer to request 'any additional verification required ... to establish proof of claim ... within 15 business days of receipt of the prescribed verification forms.'"). Thus, in part because insurers may test the validity of a health care provider's license, there is no basis to dismiss this case simply because the N.Y. DOH has issued licenses to Uptown.

 To the extent that the Defendants are arguing that the RICO claims must be dismissed because New York's No–Fault regime preempts the application of the RICO laws, this argument is without merit. As the Supreme Court has stated, "RICO can be applied in ... harmony with the State's [insurance] regulation." *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307–08, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999). Improper licensing of an Article 28 facility may be a predicate act because by allowing Allstate's RICO claim to go forward, it "supplement[s], rather than disturb[s], New York's insurance regime by 'providing another vehicle by which to carry forth the substantive policies' of the State of New York." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F.Supp.2d 212, 225 (E.D.N.Y.2009) (quoting *Dornberger v. Metro. Life Ins. Co.*, 961 F.Supp. 506, 515–521 (S.D.N.Y.1997) (Sand, J.)); *see also Rotella v. Wood*, 528 U.S. 549, 557, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (noting that the objective of RICO is to encourage "civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices").

The Defendants point out that to become an Article 28 medical facility, as opposed to simply filing for incorporation as a business, there is a stringent administrative review process. For instance, an applicant must get written approval from the N.Y. DOH, and the N.Y. DOH first must be satisfied that there is a public need for the facility. Once approved, the Article 28

facility must have a valid operating certificate to operate, which is site specific. N.Y. Public Health Law § 2805. According to the Defendants, the main distinguishing factor between the particular circumstances here and the *Mallela* case is that the N.Y. DOH "has continuously reviewed Uptown's operations and determined to continue its Certificate of Authority." (Def. Mem. at 32.) However, *Mallela* did not depend on the notion that a claim could only be brought because the incorporation by the State was a discrete event. As is the case here, the PCs in that case were subject to an approval process and were required to meet certain regulations. The fact that there may be a higher degree of oversight in the public health context as opposed to the business corporation context does not, in the Court's view, necessitate a different outcome. Certainly, the broad language of 11 NYCRR § 65–3.16(a)(12) contemplates ineligibility if the provider fails to meet *any* New York State or local licensing requirements, not only those requirements subject to a one-time inspection. Thus, the Plaintiffs' claim does not fail as a matter of law.

Finally, the Defendants point out that if the Plaintiffs believe that Uptown is not properly licensed, they have an initial resort to the New York State Commissioner of Health, citing Insurance Law § 5108(c), which states that "[e]very insurer shall report to the commissioner of health any patterns of overcharging, excessive treatment or other improper actions by a health provider within thirty days after such insurer has knowledge of such pattern." However, if this language were to preclude the type of action brought by an insurer as in this case, this would be in direct conflict with the accepted teachings of *Mallela*, which implicitly held that an insurer can bring an action for fraud based on fraudu-

lent incorporation "to recover payments already made to fraudulently incorporated providers", which is a blatant example of an "improper action." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F.Supp.2d 212, 220 (E.D.N.Y.2009); *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F.Supp.2d 94, 98–99 (E.D.N.Y.2010) (noting that the court in *Mallela* "held that fraudulently incorporated medical corporations were not entitled to reimbursement of No–Fault benefits and recognized that insurers could maintain a cause of action for fraud or unjust enrichment to recoup such payments"); *AIU Ins. Co. v. Deajess Medical Imaging, P.C.*, 24 Misc.3d 161, 167–68, 882 N.Y.S.2d 812, 818 (N.Y.Sup.Ct.2009) (stating that in *Mallela*, "[t]he court indicated that mere failure to observe corporate formalities would not render the provider ineligible .... [h]owever, 'willful and material failure to abide by state and local law,' conduct tantamount to fraud, would render the provider ineligible for no fault reimbursement") (quoting *Mallela*, 4 N.Y.3d at 320, 321, 794 N.Y.S.2d 700, 827 N.E.2d 758).

 The Defendants also claim in a one sentence conclusory fashion that Allstate cannot circumvent the Article 78 procedures by seeking alternative relief in federal court. They assert that if the Plaintiffs believe that Uptown is not properly licensed, the sole remedy exists with the State Courts of New York. However, Allstate is not challenging the N.Y. DOH's administrative decision to issue licenses to Uptown, which would possibly need to be resolved through an Article 78 proceeding. Rather, Allstate is challenging the Defendants' alleged fraudulent conduct, which would render them ineligible under the no-fault regulations to receive no-fault reimbursement. The Defendants have also not provided the Court with any administrative process through which Allstate could challenge this aspect of the Defendants' asserted conduct. Namely, the Plaintiffs cite 10 N.Y.C.R.R. § 600.5, which sets forth the grounds upon which the DOH can revoke, limit, or annul approval of an Article 78 proceeding, but provide no process by which a third-party can challenge a DOH's approval of an Article 78 proceeding.

In any event, the Court agrees that there may be serious issues as to Allstate's standing to bring an Article 78 proceeding to challenge the N.Y. DOH's approval of Uptown. As the Plaintiffs state, Allstate has been injured by the Defendants' fraudulent billing, not by the DOH's decision to issue an operating certificate to Uptown. Finally, any notion that the instant case must be brought as an Article 78 proceeding conflicts once again with the Court of Appeal's holding in *Mallela*, and the large number of federal district courts that have heard similar cases in recent years. *See, e.g., Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F.Supp.2d 227, 2012 WL 5077481 (E.D.N.Y. Oct. 16, 2012); *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F.Supp.2d 243 (E.D.N.Y.2012); *Allstate Ins. Co. v. Khaimov*, No. 11 Civ. 2391, 2012 WL 664771 (E.D.N.Y. Feb. 9, 2012); *Allstate Ins. Co. v. Lyons*, 843 F.Supp.2d 358 (E.D.N.Y.2012); *Allstate Ins. Co. v. Bogoraz*, 818 F.Supp.2d 544 (E.D.N.Y. 2011). Therefore, this ground for the Defendants' motion is without merit.

### 3. As to Whether this Action is Barred by the Doctrines of Collateral Estoppel, Res Judicata, and *Rooker–Feldman*

The Defendants also argue that Allstate's causes of action are barred to the extent they arise out of no-fault claims that were the subject of litigation in state courts and arbitrations and thereby run afoul of the doctrines of collateral estoppel,

the doctrine of *res judicata,* and the *Rooker–Feldman* Doctrine.

The impetus of this litigation is that Allstate seeks the return of payments that were previously made to Uptown because of alleged fraud. Yet, according to the Defendants, some of these claims for which Allstate seeks reimbursement arose from litigations in New York State Court and from binding arbitrations in accordance with New York Insurance Law § 5106. There were certain arbitrations where Allstate did not successfully assert that Uptown was improperly licensed and ineligible for no-fault payments. Thus, the Defendants' argument is that Allstate cannot use this Court and the present litigation to undo those decisions. Accordingly, Uptown urges this Court to dismiss all of the Plaintiffs' claims that have been litigated, adjudicated, or settled in state court and/or arbitration prior to the filing of this federal action.

However, while the Defendants have accurately described the above-mentioned legal doctrines in their moving papers, they have failed to provide any relevant case precedent which would support their position. More importantly, the Court finds that it is premature at this time to grant this portion of the Defendants' motion. As stated in *State Farm Mut. Aut. Ins. Co. v. Grafman,* 655 F.Supp.2d 212, 231 (E.D.N.Y.2009), "[a]ny arguments by defendants, for example, the role of *res judicata* or collateral estoppel, as to specific invoices submitted to plaintiff, are premature at this time. Defendants have failed to identify anything in the pleadings or the public record which is properly considered at this stage of the proceedings."

The Court agrees with the Plaintiffs that these contentions are unlikely to be resolved on a motion to dismiss. "A party may properly raise a defense of *res judicata* or *collateral estoppel* on a motion to dismiss pursuant to Rule 12(b)(6) only where the basis for that defense is set forth on the face of the complaint or established by the public record." *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,* No. 07 Civ. 051, 2007 WL 2908205, at *2 (E.D.N.Y. Oct. 7, 2007). "Even if the court chooses to convert this aspect of defendants' motion to a summary judgment motion, the moving defendants have offered insufficient information for substantive determination of this contention ..." *Id.* In response, the Defendants assert that they have provided additional samplings in their reply affidavit of specific arbitration awards where the Defendants were successful. However, this does not alleviate the Court's concerns over the suitability of this question at this juncture in the case, which other courts have similarly expressed. Therefore, this portion of the Defendants' motion is denied, with leave to reassert this contention when the time is proper and the Court has sufficient information for a substantive determination.

### 4. As to the Statute of Limitations for RICO

Finally, the Defendants contend that Allstate's causes of action are barred as they are outside the applicable statute of limitations.

The limitations period for a civil RICO action is four years. *Agency Holding Corp. v. Malley—Duff & Assoc., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The statute of limitations begins to run when the plaintiff discovers, or should have discovered, the alleged RICO injury—not the underlying pattern of racketeering activity. *See Rotella v. Wood,* 528 U.S. 549, 554, 120 S.Ct. 1075, 1079, 145 L.Ed.2d 1047 (2000) (stating that a cause of action for civil RICO accrues when a defendant commits

an act that injuries the plaintiff, not when the plaintiff has both suffered an injury and discovered the pattern of alleged RICO activity); *Frankel v. Cole*, 313 Fed. Appx. 418, 419–20 (2d Cir.2009) ("The statute of limitations is triggered when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity, even if the pattern of racketeering activity includes fraud.").

■ Moreover, the Second Circuit has established the "separate accrual rule", which holds that each time a plaintiff discovers or should have discovered an injury caused by a civil RICO violation, a new cause of action arises as to that injury. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.1988). However, this rule applies only to injuries discovered after the initial fraudulent act which forms the basis of the RICO claim. *See id.*

Here, the Defendants argue that a substantial portion of the Plaintiffs' RICO predicate acts—fraudulent mailings and money laundering—fall outside the four year statute of limitations. In particular, because the Complaint in this action was filed on August 11, 2011, the Defendants assert that the Plaintiffs can only allege RICO claims dating back to August 11, 2007. Yet, the Plaintiffs' evidence of mail fraud largely predates August 11, 2007. According to the Defendants, the same holds true for the many allegations of money laundering. In addition, with regard to what the Defendants title the Plaintiffs' "indirect claims", they assert that 91% of the $2,969,857.43 claimed improper reimbursement payments lie outside the four-year RICO statute of limitations.

In response, Allstate first explains that the actual dates of the payments made by Allstate to the Defendants are not deter-

minative for statute of limitations purposes because the limitations period did not accrue until Allstate had actual or inquiry notice that it had been defrauded into paying money. In other words, Allstate contends that because the bills and/or claims submitted by the Defendants appeared to be facially valid, Allstate could not have discovered or reasonably believed it was being defrauded until the patterns developed after years of fraudulent activity. Moreover, Allstate points to the doctrine of fraudulent concealment that was asserted in the Plaintiffs' pleading, which would arguably toll the statute of limitations for the allegations set forth in the Complaint. (DE 1, ¶¶ 122–28).

The Defendants argue that the Plaintiffs should have known of these claims long before the filing of the Complaint due to "storm warnings" under applicable precedent. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 153 (2d Cir.2012) ("The existence of 'storm warnings' sufficient to trigger inquiry notice does not begin the clock when the plaintiff actually pursues an investigation."). They point to a similar action brought by State Farm in 2007, which is a matter of public record, and also to the fact that both Allstate and State Farm are members of the National Insurance Crime Bureau and consequently share information. On the other hand, the Plaintiffs describe how it was not until examinations under oath ("EUO's") of certain doctors in early 2008 and late 2010, in which they truly began to comprehend the extent of the Defendants' alleged fraudulent scheme.

At this time, the Court will not make a ruling as to whether the Plaintiffs' claims are barred by the statute of limitations. First, as to whether there was a "storm warning" sufficient to impose a duty on the Plaintiffs to inquire and discover their injury is a fact sensitive issue and thus cannot be determined at this time. *See*

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.,* 879 F.Supp.2d 243, 270 (E.D.N.Y. 2012) ("Where it is possible to draw conflicting inferences about when plaintiffs were on notice of the fraud complained of, the issue [of statute of limitations] cannot be determined as a matter of law."); *State Farm Mut. Auto. Ins. Co. v. Rabiner,* 749 F.Supp.2d 94, 104 (E.D.N.Y.2010) ("In light of Plaintiff's allegations, it is plausible that Plaintiff could not discover defendants' fraudulent acts until sometime after the actual injury occurred. . . . Without discovery, the Court cannot make the "fact-sensitive" determination of when this fraud could reasonably have been discovered."); *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,* No. 07 Civ. 0051, 2007 WL 2908205, at *2 (E.D.N.Y. Oct. 4, 2007) (finding the statute of limitations argument premature, because "[D]efendants' argument that plaintiff's claims . . . are barred by the statute of limitations necessarily assumes facts that are beyond the pleadings and that have yet to be developed"). "[T]he court finds plausible [the] Plaintiffs' argument that they could not discover the Defendants' fraudulent scheme until a pattern of fraudulent claims developed. Further, at this point in the dispute, the Court cannot say when Plaintiffs knew or should have known of the alleged fraud." *Allstate Ins. Co. v. Ahmed Halima,* No. 06 Civ. 1316, 2009 WL 750199, at *6 (E.D.N.Y. March 19, 2009).

In addition, the Court cannot decide at this early stage whether the doctrine of fraudulent concealment will ultimately be successful and entitle the Plaintiffs to toll the statute of limitations. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,* No. 04 Civ. 5045, 2008 WL 4146190, at *9 (E.D.N.Y. Sept. 5, 2008) ("Indeed, whether defendants concealed their fraud from Plaintiff is a factual issue which would allow this court to toll the statute of limitations, and discovery has not yet been completed in this action."). The parties devote little of their briefing to an issue that may ultimately prove to be of great importance. Therefore, the Defendants' motion to dismiss the Plaintiffs' claims on the ground of statute of limitations is denied without prejudice. *See Cambridge Med., P.C. v. Allstate Ins. Co.,* 899 F.Supp.2d 227, 235, 2012 WL 5077481, at *6 (E.D.N.Y. Oct. 16, 2012) ("The court cannot hold, in the context of this motion to dismiss, that all of Allstate's RICO claims are time-barred. The motion to dismiss those claims on this statute of limitations ground is therefore denied.").

## III. ALLSTATE'S MOTION TO AMEND

Finally, the Court will address the motion for leave to amend the Complaint filed by the Plaintiffs on October 5, 2012. This motion is unopposed by the Defendants. The Scheduling Order entered by United States Magistrate Judge Arlene R. Lindsay states that the date by which any motions of this kind were to be filed was September 15, 2012. In a letter dated September 11, 2012, the Plaintiffs requested additional time to make the instant application until October 5, 2012, which was granted. (DE 186.)

As explained at the outset of this Order, this lawsuit was filed by the Plaintiffs seeking damages under the federal RICO statute in connection with the Defendants' alleged creation and perpetration of an insurance fraud scheme. In the initial Complaint, the Plaintiffs brought suit against Hisham Elzanaty ("Elzanaty"), who they claim was working in concert with coconspirator licensed medical professional Jadwiga Pawlowski, M.D. ("Pawlowski"), and their alleged fraudulently incorporated medical P.C.s—JP Medical, P.C., Accurate Medical, P.C., Nolia Medical, P.C., and Quality Medical Healthcare

Provider, P.C.—as well as co-conspirator management company Uptown. The Plaintiffs allege that the Defendants accomplished their scheme by creating fictitious medical facilities, which held themselves out to the Plaintiffs as legitimately incorporated medical entities under New York law. In addition to the five fraudulently incorporated PCs, the Plaintiffs assert that Elzanaty also defrauded the Plaintiffs of approximately $2.1 million utilizing three entities formed under the Uptown umbrella pursuant to Article 28 of the New York State Public Health law, referenced collectively as "Uptown" throughout this opinion.

Finally, the Plaintiffs claim that the Defendants furthered their fraudulent activities through an elaborate scheme of money laundering. According to the Complaint, large sums of money were generated by the operation of the Pawlowski PCs, which was then funneled into accounts that were maintained and/or controlled by Uptown, Elzanaty, and/or one of Elzanaty's co-conspirators.

The Plaintiffs now seek to amend their Complaint to add an additional defendant. In their memorandum in support of this motion, the Plaintiffs explain that on April 19, 2012, during the discovery process, the Plaintiffs partially conducted the deposition of one of the previous defendants, Jadwiga Pawlowski. During this deposition, the Plaintiffs were able to confirm certain suspicions that they were unable to corroborate previously. Thus, the Plaintiffs seek to add another management company that Elzanaty allegedly used to launder money from at least one of the Pawlowski P.C.s—Allstar Health Care Management, Inc. ("Allstar").

### A. *Legal Standard on a Motion to Amend*

 Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading by leave of court and leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Monahan v. N.Y. City Dep't. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Generally, amendments are favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y.1998) (internal quotation marks and citations omitted). Where, as here, a proposed amendment adds new parties, the propriety of amendment is governed by Fed.R.Civ.P. 21, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21; *see Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 165 (E.D.N.Y.2010) (citing *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91 (S.D.N.Y.2010)); *see also City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir.2006) ("Although Rule 21 'contains no restrictions on when motions to add or drop parties must be made, the timing of the motion may influence the court's discretion in determining to grant it. Thus, the court typically will deny a request that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action.'") (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3d § 1688.1 at 510 (West 2001)). Rule 21 grants the court broad discretion to permit the addition of a party at any stage in the litigation. *Sullivan v. West New York Res., Inc.*, No. 01 Civ. 7847, 2003 WL 21056888, at *1 (E.D.N.Y. Mar. 5, 2003).

 In deciding whether to permit the addition of defendants, courts apply the "same standard of liberality afforded

to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.,* 86 F.R.D. 524, 528 (S.D.N.Y.1980) (quoting *Fair Hous. Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972)). Thus, leave to amend a complaint to assert claims against additional defendants "should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court." *DeFazio v. Wallis,* No. 05 Civ. 5712, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 603–04 (2d Cir.2005); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995)).

**B.** ***As to the Plaintiffs' Motion to Amend the Complaint to Add a Defendant***

■ First, the Court looks at whether the amendment to add Allstar as a defendant would be futile. A proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir.2002). In considering a Rule 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Further, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.,* 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999).

■ Here, the Proposed Amended Complaint asserts that Allstar was another management company whose role was allegedly to assist Elzanaty to funnel ill-gotten monies from the Plaintiffs. During Pawlowski's deposition, she testified that Allstar was a management company created solely for the purpose of managing a J.P. Medical location in Queens. The claims that the Plaintiffs seek to assert appear to have colorable merit, and the Defendants have not shown that there is no set of facts consistent with the allegations that would entitle the Plaintiffs to relief. In fact, the Defendants have failed to oppose the motion. Accordingly, the Court finds that the proposed amendment to add Allstar as a defendant would not be futile as the allegations against it are enough to raise a right to relief above the speculative level.

■ Next, the Court will look at whether the Plaintiffs have exhibited undue delay in bringing the motion to amend. "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *H.L. Hayden Co. v. Siemens Med. Sys.,* 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (collecting cases). Length of time, in of and itself, does not provide a basis to deny a motion to amend. *See Daniels v. Loizzo,* 174 F.R.D. 295 (S.D.N.Y.1997) (finding that the plaintiff's nine-year delay in submitting proposed amendments to the complaint did not necessitate the denial of the motion to amend absent evidence of prejudice to the defendants and in light of plaintiff's pro se status and former inadequate representation); *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–35 (2d Cir.1995) (noting that a lengthy delay alone, in the absence of prejudice or bad faith, is not a sufficient basis to deny a motion to amend).

This case is still in the early stages of litigation, as discovery has not been completed by any party. Thus in the Court's view, permitting this amendment would not substantially delay the final disposition of the action.

In this same vein, the amendment would not be unfairly prejudicial. In analyzing "prejudice," courts consider whether the amendment would: (1) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (2) significantly prolong the resolution of the action, or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan*, 214 F.3d at 284. However, in general, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust of Chicago*, 889 F.2d 1248, 1255 (2d Cir.1989). The party opposing an amendment has the burden of proving that leave to amend would be prejudicial. *See Blaskiewicz v. Cnty. of Suffolk*, 29 F.Supp.2d 134, 137–38 (E.D.N.Y.1998). The main concern is undue or substantial prejudice-namely, when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered. Once again, discovery has yet to be completed in this action. Especially in light of the Defendants' failure to oppose the instant motion, the Court finds that the Defendants will have sufficient time and opportunity to defend against any additional allegations contained in the Proposed Amended Complaint as against Allstar.

Finally, the Court addresses whether the Plaintiffs have demonstrated bad faith so that an amendment to the Complaint should be prohibited. In the Court's view, nothing in the record indicates bad faith on the part of the Plaintiffs in filing the present motion. Because the proposed amendment is apparently based upon information obtained by the Plaintiffs through discovery, in particular the deposition of Pawlowski, the Court finds that the Plaintiffs are moving in good faith, and the Defendants do not contend otherwise.

Thus, after reviewing the entire record, the Court sees no reason to deny the present motion.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' motion to dismiss is denied in its entirety; and it is further

**ORDERED** that the Plaintiff's motion to amend the Complaint to add Allstar Health Care Management, Inc. as a defendant is granted; and it is further

**ORDERED** that the Plaintiffs shall have twenty (20) days in which to serve the amended Complaint upon the Defendants; and it is further

**ORDERED** that the amended caption will read as follows:

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, Plaintiffs,

-against-

HISHAM ELZANATY, HISHAM AHMED ELSHERBINY, ALAN GOLDENBERG, CAN MEDICAL, P.C., and UPTOWN HEALTH CARE MANAGEMENT, INC., d/b/a EAST TREMONT MEDICAL CENTER, NEW YORK NEURO & REHAB CENTER, JEROME

FAMILY HEALTH CENTER, and Allstar Health Care Management, Inc., Defendants.

**SO ORDERED.**